THE BEATTIE MANUFACTURING COMPANY, Appellant, v. CHARLES CLARK, ANNIE GERARDI and JOSEPH GERARDI.

Division Two, December 10, 1907.

1. CONTRACT: For Benefit of Another.  A contract, upon a valid consideration made between two or more persons for the benefit of a third party, may be enforced by said third party, if he adopts it after it is made, though he be not named in the contract or may not know of it at the time.

2. ———: ———: For Parties Themselves.  But if it appears from the contract itself, as does the contract sued on in this case,

that it was made for the benefit of the parties thereto, and no other, an action by a third party cannot be maintained thereon.

3. ———: **Object: Security.** Where the prime object of the contract between the landlord and lessee, as declared in the instrument itself, was to insure the landlord that the lessee would take possession under the lease, and would pay rent as it accrued, and, in order to further insure the landlord the payment of the rent as it accrued under the lease, the lessee deposited with the landlord ten thousand dollars to be used by him in paying for certain improvements of the premises, said improvements when made to become the property of the landlord as security only for the payment of the rent, and the lessee contracted with plaintiff to make the improvements and it did make them, and the landlord honored and paid the lessee's orders therefor to the amount of $6,500, and settled with her for the balance, after deducting rents then due, the contract was not made for the benefit of plaintiff, but for the benefit of the landlord, and the plaintiff cannot recover from the landlord, for the unpaid-for improvements, the difference between the orders honored and the amount of the deposit.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*J. F. & R. H. Merryman* for appellant.

The contract sued on is a written one. Our action is not based on any promise of Mr. Clark to the agent Bates made verbally to pay the debt to the Beattie Manufacturing Company, or rather to pay an amount of this debt equal to $10,000, the deposit in his hands. Our cause of action is based on the written contract entered into by Clark and the Gerardis. No principle of law is so well settled in this State as that a contract between the parties upon a valid consideration may be enforced by a third party when entered into for his benefit, though this third party is not named in the contract. Beattie Mfg. Co. v. Gerardi, 166 Mo. 153. The suit at bar, therefore, is upon a written contract. It is a common law action; not an equitable proceeding. Devers v. Howard, 144 Mo. 678.

*Boyle & Priest* and *Edward T. Miller* for respondents.

(1)  The contract sued upon is one exclusively for the benefit of defendant Clark—a contract of indemnity—and plaintiff is not entitled to maintain an action upon it.  It was not made for plaintiff's benefit as its object, and it was not the party intended to be benefited by it.  The benefit, if any, that might accrue to it under the contract was only indirect and incidental. Constable v. National Steamship Co., 154 U. S. 74; State ex rel. v. O'Connell, 99 Mo. 357; Devers v. Howard, 144 Mo. 671; Simpson v. Brown, 68 N. Y. 355 (cited in Howsmon v. Trenton, etc., 119 Mo. 304); Burton v. Larkin, 36 Kan. 246 (cited in Porter v. Woods, 138 Mo. 554).  (2)  If defendant is not liable to Mrs. Gerardi, he is not liable to plaintiff.  (3)  The only theory upon which defendant Clark can be held in this action is that he became a trustee of the fund deposited with him for whomsoever would furnish equipment for the restaurant, etc., in the proportion of their bills to the amount so deposited, as well as trustee for himself for the amount of rent which should become due up to the termination of the contract of deposit by its own limitations.  So long as plaintiff's interest in that fund remains undetermined and the trust is incomplete, no action at law can be maintained against the trustee. He must be sued in equity, and make all who may be beneficiaries under the trust parties.  Jasper v. Hazen, 44 N. W. 1018; Davis v. Coburn, 128 Mass. 377.

BURGESS, J.—This is a suit to recover judgment against defendant Clark for the sum of $6,000, with interest at the rate of six per cent per annum from June 16th, 1893, for which amount plaintiff claims he is indebted to it by reason of a written contract between him and defendant Annie Gerardi whereby, for certain improvements to be made on premises leased

by him to her, she placed in his hands $10,000 which he agreed to pay the parties making such improvements, and as plaintiff made said improvements it claims that said contract was made for its express benefit and that it can maintain its action thereon.

The petition, after alleging the incorporation of plaintiff, states that on the 27th day of January, 1893, the defendants Charles Clark and Annie Gerardi, wife of defendant Joseph Gerardi, entered into a written contract whereby Clark leased to Mrs. Gerardi, for a term of ten years, to commence the 24th day of February, 1893, and to end on the 23d day of February, 1903, the building and premises known as 213 and 215 North Broadway, in the city of St. Louis, together with the lot of ground on which same were situated; that the object and purposes of the parties to the lease were to alter and improve said building and premises to fit the same for the purpose of establishing and conducting a first-class restaurant, saloon and bar, and in order to carry into effect such purpose and object they entered into a collateral written agreement, in which Clark is named as party of the first part and Annie Gerardi as party of the second part, the material parts of said agreement being as follows:

"It is understood and agreed that the party of the second part intends to use said premises for the purpose of conducting the business of a first class restaurant, saloon, cigars and tobacco, game and table furnishings, and that portion of the premises above the first or ground floor for office, cooking and living purposes, and that she intends to spend at least the sum of ten thousand dollars for the purchase of the necessary equipment of said building for such uses.

"Now, in order to insure the said party of the first part that the party of the second part will take possession of the said premises under the lease, and will expend the money aforesaid for equipping the restaurant,

saloon and other departments aforesaid, and in order to further insure the party of the first part in the payment of his rent from time to time as and when the same accrues under the terms of said lease, the party of the second part now agrees to turn over and pay unto the said party of the first part the sum of ten thousand dollars in money, the same to be paid out by the said party of the first part in payment of the equipment of said restaurant, saloon and other departments as the same shall be placed in said premises by the party of the second part. . . .

"It is further understood and agreed that the equipment of whatever kind and nature the same may consist, after the same shall have been placed in said building, shall become and be the property of the party of the first part, as security, however, only for the payment of the rent, and for the performance of the obligations specified to be performed by the party of the second part under the lease."

It was also agreed in the contract that Clark should expend, as soon as possible after February 24, 1893, the sum of twenty-five hundred dollars in making alterations in the front of said building, according to plans and specifications to be furnished by Mrs. Gerardi.

The petition further states that, in pursuance of the aforesaid agreement, Isaac Taylor was employed to draw the plans and specifications and to superintend the improvements and equipments aforesaid, and that the plans and specifications were prepared by him and presented to defendants Charles Clark and Annie Gerardi and Joseph Gerardi, her husband, who acted as her agent, and were approved by them, and that said plans and specifications were then presented to plaintiff, with request that plaintiff consider the subject and take the contract to furnish the materials and equipments and execute the work aforesaid; that plaintiff knew that Annie Gerardi and Joseph Gerardi were insolvent, and

declined to consider any proposition for furnishing the materials and equipments and constructing the work according to the plans and specifications till further advised as to the person who would pay plaintiff for said material and work. "Plaintiff was never shown said collateral agreement, nor did it know of its existence, but plaintiff caused its agent to call on defendant Charles Clark and to learn of him, as one of the parties interested, as to who would pay for said material and work; the said Charles Clark then assured plaintiff's agent that the defendant Annie Gerardi had deposited ten thousand dollars with him to pay plaintiff for furnishing and executing the work according to the plans and specifications aforesaid; plaintiff in consideration of the assurance that defendant Charles Clark had on deposit ten thousand dollars for the purpose of paying for the material and work aforesaid, providing plaintiff would do the work and furnish the materials aforesaid, thereupon on account of the aforesaid assurance plaintiff on or about the 2d day of March, 1893, entered into a contract with Annie Gerardi to furnish the material and labor aforesaid in accordance with plans and specifications furnished by Isaac Taylor, and under his superintendence and directions, said superintendent having the power to reject any of the materials or work furnished by plaintiff under the contract, and plaintiff was to make any alterations in said plans and specifications and do any extra work under the directions of said architect." The petition further alleges that plaintiff, under its said contract with Annie Gerardi, was to be paid, for its services and for the labor and material to be furnished, the sum of $16,701.28, and for doing any extra work, according to the terms of said contract, it was to receive additional consideration, with all of which defendant Clark was made acquainted, and consented thereto; that plaintiff performed all the conditions of said contract, according to the directions

of the architect and the defendants, for which it was to receive $16,701.28, and furnished extra work and materials amounting to $3,120.43; that said plans and specifications included the making of the alterations in front of said building for which Clark was to pay $2,500 and for which he did pay that sum on or about June 8, 1893; that Annie Gerardi deposited with defendant Clark the $10,000 referred to in said collateral agreement and that the plaintiff is the party who furnished the equipments of said restaurant, saloon and other departments and for whose benefit Clark held said deposit, all of which equipments were furnished and completed by plaintiff by the 16th day of June, 1893; that plaintiff, and no one else, was entitled to the said $10,000, but that said Clark never paid to plaintiff any of said amount, except $4,000 on April 12, 1893, and although plaintiff demanded the balance, $6,000, on or about the 16th day of June, 1893, and many times since, said defendant Clark has not paid same. That, with the exception of the two amounts referred to, which were paid by defendant Clark, none of the amount due plaintiff has ever been paid by any one, except $1,000 paid by Annie Gerardi on September 8, 1893, but which plaintiff says was in no way connected with the collateral agreement upon which the suit is based.

The separate amended answer of defendant Charles Clark to said petition contains five defenses: (1) Denies each and every allegation in said petition contained; (2) pleads the Statute of Frauds; (3) pleads the Statute of Limitations; (4) that the matters and things alleged in the petition are *res adjudicata;* (5) that the defendants Annie Gerardi and Joseph Gerardi are improperly united in this action, and are not necessary parties thereto.

Plaintiff's replication denied each and every allegation in said answer contained.

Mrs. Annie Gerardi, testifying in behalf of the plaintiff, identified the lease and the collateral contract between herself and defendant Clark, both of which were introduced in evidence. She also identified a contract which she had entered into with the plaintiff to alter the premises leased to her, and the specifications in that connection, which were also offered in evidence. This contract between herself and plaintiff was made and entered into the 2d day of March, 1893. By its terms the plaintiff agreed to make, do, build and finish, entire and complete, all alterations and additions to be done in and to the building in question, according to the drawings and specifications made for same by Isaac S. Taylor, architect, the entire work to be finished and completed by the 2nd day of May, 1893, the defendant, Annie Gerardi, agreeing to pay for the performance and completion of said work the sum of $16,701.28 to the plaintiff, in manner as follows: $8,350.64 when the work was finished; $2,350 by a thirty-day note; $2,000 by a sixty-day note; $2,000 by a ninety-day note, and $2,000 by a one hundred-and-twenty-day note. The witness stated substantially that plaintiff, the Beattie Manufacturing Company, had performed the work under its contract, that she had paid part of the money to Clark for plaintiff, and that she was still indebted to plaintiff in a sum over $12,000. Two orders were given by witness on Clark in favor of plaintiff, one of which orders was for $4,000, dated April 12, 1893, and one for $2,500, dated June 4, 1893. The witness then testified as follows:

"Q. I will ask you if you gave the Beattie Manufacturing Company any other orders on Mr. Clark? A. Yes, sir.

"Q. When? A. Well, I suppose they are on record. I presume Mr. Clark has them. I have not got them.

"Q. They were given to the Beattie Manufacturing Company? A. Yes, sir.

"Q. Do you remember the amounts? A. Well, I cannot recall the amounts just now.

"Q. When was it? A. It was in July of '93."

On cross-examination, the witness identified thirteen other orders made by her on Clark in favor of other parties for furnishings, decorations, etc., for the building in question, which orders were afterwards introduced in evidence over the objection of plaintiff.

John F. Bates testified that he was in the employ of plaintiff in 1893; that he met Mr. Gerardi on the cars, and that Gerardi told him that he was going to put up a restaurant on Broadway and that the plans and specifications were at Mr. Taylor's office; that witness then had a conversation with Mr. Clark, the defendant, and showed Clark the plans and specifications which had been given him by Gerardi, and that Clark told him that the Gerardis had $10,000 deposited there to pay for this work.

"Q. When was this conversation? Was that before you entered into the contract? A. Before we entered into the contract, because I wanted to assure myself, your Honor, that the money would be coming to pay for this work, because it took a great deal of time to look it up. And after Mr. Clark. . . . told me that there was $10,000 there to pay for this work that the Beattie Manufacturing Company was to put in there, you may depend upon it that I looked for it pretty closely to get it and secure it." The witness then stated that after this the plaintiff closed the contract with the Gerardis for the alteration of the building, that the Gerardis gave him numerous orders for the money and for the full amount. He said he collected two of these orders, one for $4,000 and one for $2,500, and that they gave him other orders at different times.

"I delivered these orders to Mr. Clark's clerk down here in his office. I failed to see Mr. Clark only once or twice, and had a very pleasant talk with him each time. The orders, to my knowledge now, were given to the clerk, Mr. Clark's clerk, for him to give us the money on those orders. I never got them. I never got to see Mr. Clark after." Witness said that the person to whom he delivered those orders was the same person to whom he had delivered other orders, and from whom he had received Mr. Clark's checks in payment thereof.

"Q. Were they given after the order for $4,000 and the order for $2,500, or before it? A. Oh, after; yes, after.

"Q. Were they given before the completion of the work? A. Yes, sir, to the amount of $10,000. Yes, sir, you see we did more than $10,000 worth of work there.

"Q. You say these orders were given for the balance of the $10,000 after the payment of $4,000 and $2,500? A. Yes, sir.

"Q. How many orders were there? A. Well, there was three or four, I do not know which.

"Q. And the orders did not exceed the balance of $10,000? A. No, sir; it was to cover that amount of money that they had there.

"Q. That is, the aggregate amount of all the orders? A. Yes, sir."

On cross-examination the witness was examined at some length as to the party to whom he presented the orders and as to the time when he first saw Mr. Clark and had the conversation with him in regard to the deposit of $10,000 and as to whether it was before or after the contract entered into by the Gerardis with the plaintiff. On this point, the witness on cross-examination testified as follows:

"Q. How long before? A. Well, perhaps, three weeks.

"Q. You say it was before? A. I saw Mr. Clark about the $10,000 before the contract was made; yes, sir.

"Q. You know that Mr. Clark told you when you went to see him before the Beattie Manufacturing Company made the contract with the Gerardis that he had received from the Gerardis $10,000? A. Yes, sir."

Joseph Gerardi testified that at the time they made the deposit of $10,000 Mr. Charles Clark agreed to expend $2,500 on the alteration of the front part of the building. That the $2,500 order was in payment of the alteration of the front part of the building. On this point the witness testified:

"Then we went to work and made this contract, and we gave the Beattie Manufacturing Company orders for this money. The first order they received, I think, was for $4,000. The second order was for $2,500 for the front they put in that building, and we left the remainder of $6,000 in Mr. Clark's hands, and then we further gave them an order, I think, for $4,000." . . .

"Q. Well, the further order after that, was that for all the balance that was in his hands, the last order? A. I think at that time, yes, sir.

"Q. Now, did you go down there to see Mr. Clark with Mr. Bates? A. I went down with Mr. Bates on one occasion and Mr. Clark was not in. His representative was there, and he said he would hand the order to Mr. Clark when he came in.

"Q. Do you remember when that visit was? A. I could not say. It was about that time when the thing was being finished."

The witness then stated that the building was finished about the middle of June, 1893.

"Q. And when the Beatties had turned that over to you they had put in, had they not, $19,000 into that building? A. I think that was about the amount."

The witness on cross-examination identified certain orders or vouchers afterwards introduced in evidence over the objection of the appellant and to which appellant then and there excepted at the time. As to the 13th voucher, same being for $2,120.28, and purporting to be a check in favor of Mrs. Gerardi for that amount, the witness stated: "Well, this money was not paid to us. This money Mr. Clark kept for rent."

William J. Beattie, the president of the Beattie Manufacturing Company, in regard to the orders, testified: "One was for $4,000 and the other was the difference between the $8,000 due under the order and eight thousand and some odd dollars under the contract that we were to receive in cash.

"Q. Let me understand you. You mean you excluded in your answer there the $2,500 payment from Mr. Clark? A. I certainly do, as it was a separate transaction.

"Q. And you mean by that then that you received two orders outside of the one order for $4,000? A. That is right.

"Q. Now, what were those orders? A. One was for $4,000 and one was the balance on the contract."

The witness then stated that he had a conversation with the agent of Mr. Clark a few days after the $2,500 was paid. That on the 8th day of June, 1893, this agent of the defendant Clark paid the witness $2,500. "That two or three days after that check was paid him he appeared at our office with these papers in his hands."

"Q. What papers did he have? A. He had the order on Mr. Clark for $2,500.

"Q. What else? A. He had a receipt of our representative for the $2,500.

"Q. What did he want you to do then? A. He wanted me to release Mr. Clark from all further responsibility in the premises.

"Q. What did you say to him? A. I told him I would not.

"Q. Then what did he say? A. He said, 'If you do not you will not receive another cent.'

"Q. Another cent of what money? A. Of the balance we held.

"Q. What did the agent say? A. He said if I did not sign a release of Mr. Clark in the premises he would not pay another cent of the balance.

"Q. Then what did he say? A. He parted with me. He said I would find it out for myself.

"Q. Did Mr. Clark pay you any sum after that? A. Never a cent."

In regard to the written agreement between Mr. Clark and the Gerardis, according to which agreement the Gerardis deposited $10,000, the witness testified:

"Q. When did you first learn of this written agreement that is in this case? A. Not until a few years ago and it was after the trial and decision of Judge Valliant.

"Q. You mean in the mechanic's lien suit? A. That is right. It was the appearance of this contract. I understand that it appeared in a fight between Mr. Gerardi and Judge Laughlin."

On cross-examination, the witness testified that this contract was never offered in evidence in the mechanic's lien suit and that he had a full recollection of that suit. That he never pleaded this contract in the replication in that cause, and he knew that to be a fact. The contract between the Beatties and the Gerardis relating to the payment was then read to the witness in which the Gerardis agreed to pay the plaintiff $8,350.64 when the work should be set up and finished and accepted by the said architect.

"By the COURT: Now, I understand you to say that you had received $4,000 on that and that you got another order for $4,000 and a third order and a fur-

ther order for $2,500; the third order for the balance of $8,000? A. That is right.

"Q. Why did you include the note in your order? A. It was then due, I think.

"Q. Well, that was a note from Mr. Gerardi? A. It was the amount of a note, but the note was never issued. There was never any note issued. The contract called for a note but the notes were never issued."

The contract was then produced and the second item was $2,350.60 to be paid by a thirty-day promissory note, dated from time of acceptance of the work; the first item being $8,350.64 and the second $2,350.60.

Charles Clark, introduced by defendants, testified that he was a party to the contract which was offered in evidence between Annie Gerardi and Charles Clark, dated the 27th of January, 1893, and that Mrs. Gerardi made the first deposit of $5,000 under the terms of that contract on the 8th day of February, 1893, and the second deposit on the 13th day of February, 1893.

The witness then testified as to certain payments made by him, and identified certain vouchers and a certain balance sheet from his books; all of which was introduced over the objection of the plaintiff, with the exception of the two items paid to the plaintiff, namely, one for $4,000, on April 12th, and one for $2,500, on June 8th, 1893.

The witness denied that he had ever had the conversation with Mr. Bates in regard to the deposit of $10,000 by the Gerardis, and stated that he left St. Louis on the 16th day of February, 1893, and returned on March 3rd, and that he never knew that the Beattie Manufacturing Company had the contract until the order for $4,000 was presented to him.

On cross-examination, the witness stated that his first official notice, so to speak, of the fact that the Beattie Manufacturing Company had the contract was when he paid the order for $4,000.

The cause was submitted to the court upon the pleadings and evidence, a jury being waived.

Plaintiff excepted to the action of the court in refusing to give the .following declarations of law asked by it:

"1. The court, sitting as a jury, declares the law to be that, under the law and pleadings in the case and under the evidence, all the evidence as to payments and as to the thirteen vouchers and the balance sheet introduced by the defendant Clark are to be disregarded and stricken from the record except voucher No. 1 relating to the $4,000 paid to the plaintiff on April 12th, 1893, and voucher No. 7 relating to the payment of $2,500 made by the defendant to plaintiff.

"2. The court (sitting as a jury) declares the law to be that if the jury believe from the evidence that the defendant Charles Clark and the defendant Annie Gerardi entered into a certain written contract on or about the 27th day of January, 1893, as set out in plaintiff's petition; and if the jury further believe from the evidence that in pursuance of said contract the defendant Annie Gerardi deposited with the defendant Charles Clark the sum of $10,000, the same to be paid out by the said defendant Charles Clark in payment of the equipment of a certain restaurant and saloon on the premises as stated in said contract, and in pursuance of said contract the defendant Charles Clark also agreed to expend the sum of $2,500 in making alterations in the front of said building according to the plans and specifications of the said Annie Gerardi, the same being $12,500 in all to be expended in the alterations of a certain building known as 213 and 215 North Broadway, said building being owned by the defendant Charles Clark and leased to the defendant Annie Gerardi; and if the jury further find that after the execution of said contract the plaintiff entered into a certain contract with the defendant Annie Gerardi, where-

in in pursuance of said contract plaintiff furnished
certain material and furnished certain moneys for la-
bor on the premises owned by said defendant Charles
Clark and leased by the defendant Annie Gerardi, and
that under and by the terms of said contract, the plain-
tiff for his services and for the material and labor fur-
nished and for the improvements was to be paid the
sum of $16,701.28, and also to perform certain extra
work according to the terms of said contract; and if
the jury believe that the plaintiff did perform said ser-
vices and furnished said labor and material to the ex-
tent of $16,701.28, and also certain extras to the extent
of $3,120.43; and if the jury further find and believe
from the evidence that the defendant Charles Clark,
under and in pursuance of the contract set out in plain-
tiff's petition, and in consideration of the material fur-
nished and labor performed by the plaintiff under and
by virtue of its contract with the defendant Annie Ger-
ardi, made certain payments to the plaintiff, to-wit,
$4,000 on April 12th, 1893, and $2,500 on June 8, 1893,
in payment for making alterations on front wall as re-
quired by said contract to be paid by said defendant
Clark himself; and if the jury further find that the de-
fendant Annie Gerardi was on or about July 1, 1893,
indebted to plaintiff in or about the sum of $12,000 or
more and is still so indebted to plaintiff in addition to
the sums received from the said defendant Charles
Clark for the labor and material furnished by it on the
premises aforesaid under and by virtue of the terms of
its contract with said Annie Gerardi, if the jury believe
any such sums were so received under the terms of said
contract, then the jury are instructed to find for the
plaintiff (against the defendant Charles Clark) for the
difference between the sum of $4,000, the amount of the
aforesaid payment made by the defendant Charles
Clark, and the sum of $10,000, the amount of the deposit
of Annie Gerardi with the defendant Clark, with inter-

est at the rate of six per cent per annum from July 1, 1893."

At the request of the respondent, Charles Clark, the court gave the following instructions, to the giving of which plaintiff excepted:

"1. The court declares the law to be that, under the pleadings and all the evidence, the plaintiff is not entitled to recover in this action.

"2. That the contract sued upon was not made with the object of benefiting the plaintiff, but only as a security to the defendant, and the plaintiff is not entitled to recover thereon.

"3. That if the plaintiff, at any time previous to five years prior to May 9, 1902, could have brought its action, then it is not entitled to recover because of the Statute of Limitations.

"4. That if the defendant Clark paid out the sum of ten thousand dollars for rent due himself from Mrs. Gerardi and for equipment for restaurant in building No. 213 and 215 Broadway upon her order, then the plaintiff is not entitled to recover."

The court rendered judgment in favor of defendant, Charles Clark, and against plaintiff for costs, and dismissed as to defendants Annie Gerardi and Joseph Gerardi, there being no relief or judgment prayed for or against them.

Plaintiff duly filed motion for a new trial, which motion was overruled by the court, and plaintiff appealed.

Notwithstanding the evidence introduced by plaintiff tending to show a verbal contract or agreement between Bates, agent for plaintiff, and defendant Clark, by the terms of which Clark was to pay the debt to the Beattie Manufacturing Comapny, or rather to pay a portion thereof equal in amount to the $10,000 deposited with Clark, this action is not based upon such promise, but upon the written contract; so that the decision

of this cause turns chiefly upon the construction to be placed upon the contract entered into by Annie Gerardi and Charles Clark upon the day the $10,000 was deposited by her with him. Plaintiff's position is that the contract was made for its benefit, for a valid consideration, and may be enforced by it though it be not named in the contract, or may not have known of it at the time, if it was adopted after it was made. Upon the other hand, the defendant's contention is that before a third party can maintain an action upon such a contract, it must, first, be made for his benefit as its object, and he must be the party intended to be benefited, and, second, there must be some privity between the two, the promisor and the party to be benefited, and some obligation or duty owing from the promisor to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent to him personally.

Whatever the rule may be in other jurisdictions, it has been uniformly held by this court that a contract, upon a valid consideration, made between two or more persons for the benefit of a third party, may be enforced by the party for whose benefit it is made, if he adopts it after it is made, though he is not named in the contract or may not have known of it at the time. [Rogers v. Gosnell, 58 Mo. 589; State ex rel. v. Gaslight Co., 102 Mo. 482; Ellis v. Harrison, 104 Mo. 276, and cases cited; St. Louis to use v. Von Phul, 133 Mo. 561; Devers v. Howard, 144 Mo. 671; School District of Kansas City ex rel. v. Livers, 147 Mo. 580; City of Bethany v. Howard, 149 Mo. 504; Beattie Mfg. Co. v. Gerardi, 166 Mo. 142; Kansas City ex rel. v. Surety Co., 196 Mo. 281.] Defendant, however, contends that notwithstanding the rule announced, it does not help plaintiff's case because the contract and circumstances in proof show that the collateral contract upon which plaintiff bases this action was entered into the same

day on which the lease of the premises was entered into by Clark and Mrs. Gerardi; which contract was in a measure explanatory of the lease; that Mrs. Gerardi's intention was to equip the building for restaurant and other similar purposes, that possession could not be immediately given, and that Clark had no assurance other than the personal obligation of Mrs. Gerardi that the building would be equipped or that Mrs. Gerardi would take possession of it and pay the rent after possession was taken; that in order that Mrs. Gerardi might have the means at her command to equip the building for the purposes indicated, and at the same time give to Clark the security that he demanded, she agreed to and did deposit with him ten thousand dollars to be expended upon her orders in the equipment of the building and in putting material therein which would be to him the equivalent of that amount of money as security for the rental. Defendant Clark contends that the last clause of the contract makes it clear that this is the only fair and logical meaning of the contract, which said clause is as follows:

"And it is finally agreed that when the $10,000 contemplated by this agreement has been actually expended for equipment of the premises, and has been converted into such equipment as the second party may place in the building, and shall thus have been brought under and subject to the provisions of said lease, then this extraneous agreement shall at once become *functus officio,* and thereafter null and void, and the lease from that time forward shall constitute the sole agreement between the parties."

While a party may sue upon a valid contract made between other parties competent to contract for his benefit, although he may not know of it at the time or be named in it, if he adopt it after it is made, yet, in order to be in a position to maintain an action upon it, he must bring himself within the rule before announced.

But if it appear from the contract itself that it was made for the benefit of the contracting parties therein, and no other, an action by a third party cannot, of course, be maintained thereon.

Plaintiff, as supporting its contention, relies chiefly upon what was said in the opinion of this court when the case was before us upon a former occasion (166 Mo. 142) wherein was announced the same rule as in the cases cited. The first count of the second amended petition in that case contained the necessary averments to bring plaintiff within the said rule, and while it was held that the petition stated a cause of action upon that feature of the case, a demurrer to the petition was sustained upon other grounds. The contract in question was not before the court for consideration on that appeal.

It seems from the terms of the contract that its prime object was, as declared in the instrument itself, to insure Clark that Mrs. Gerardi would take possession under the lease, and in order to further insure Clark in the payment of his rent as it accrued under the lease, Mrs. Gerardi deposited with Clark the sum of $10,000, to be used by him in payment of the equipment of said restaurant, said equipment, when placed in the building, to become the property of Clark as security only for the payment of the rent and for the performance of the obligations of the contract. According to the express terms of the contract, Clark was to pay out this money for the equipments as they were put in by Mrs. Gerardi. There was no restriction as to the value of the equipments to be placed in the premises, but the party of the second part (Mrs. Gerardi), not some other person, was to expend at least $10,000 for that purpose. There is nothing in the contract which seems to indicate that its purpose was to secure the plaintiff for services rendered or for materials furnished by it in the equipment of the premises in ques-

tion. It does not seem that any estimate of the cost of the equipments was made at the time the contract was entered into, or that the cost was to be restricted to any particular amount, but it does appear from the evidence that Clark paid out to plaintiff $6,500 out of this $10,000. It further appears that this contract was interpreted by the parties thereto as security for the benefit of Clark and him alone. That such was the interpretation is further evidenced by the fact that on August 8, 1903, Mrs. Gerardi and Mr. Clark had a full settlement, Mrs. Gerardi receiving from him the sum of $2,120.28, being the balance in full, with all interest accrued, remaining in the hands of Clark of the said ten thousand dollars theretofore deposited with him by her, the receipt given by her reciting that the other portion of the said ten thousand dollars had been expended by him, upon her order, in pursuance of the terms of the agreement. Clark testified that said $2,120.28 was not paid by him directly to Mrs. Gerardi, but by an exchange of checks between him and her by which she paid him the difference between said last-mentioned sum and the sum of $3,060, and in addition thereto the sum of $67.50, making a total of $3,-127.50 which she paid to Clark for rental on that date.

It is clear, we think, under the facts disclosed by the record in this case, that plaintiff cannot maintain this action upon this contract, and it follows that no error was committed by the court in refusing declarations of law numbered 1 and 2 asked by plaintiff, or in giving the first, second and fourth asked by defendant. Declaration of law No. 3, given at the instance of defendant, to the effect that, if plaintiff, at any time previous to five years prior to May 9, 1902, could have brought its action, it was not entitled to recover because of the Statute of Limitations, should not have been given as it had no place in the case, but as the cause was tried by the court, and the finding and judg-

ment could not have been otherwise than it was, the judgment should not be reversed on that ground.

Our conclusion is that the judgment is for the right party under the law and the evidence, and should be, and is, affirmed.

All concur.