HAWKINS & BLACKWELL, Adm'rs. of BLACKWELL *vs.* RIDEN-
HOUR.

13 125
37a 75
13 125
120 418

1. Where the payee of a note merely advises the principal to carry his property to a better market, out of the State, sell it and return and pay his debts, and if unable to pay all, to pay *pro rata*, is not a fraud upon and will not operate as a release to, the securities in the note.

2. No delay on the part of the creditor, will operate to release the security, which would not act as a bar for the principal.

3. If the publication of the notice to creditors required by the 20th section of the 2nd article of the act concerning the administration of estates, be not *commenced within thirty days* after the grant of letters, debts against the estate are not barred, after the lapse of three years.

4. All judgments, rendered since the act approved January 15, 1847, "regulating the interest on money," took effect, can bear only six per cent. interest, no matter what interest the instrument, on which the judgment is founded, bears.

APPEAL FROM CRAWFORD CIRCUIT COURT.

STATEMENT OF THE CASE.

This was an action of debt brought by Ridenhour, plaintiff below, against Wm. E. Hawkins, administrator, and Nancy Blackwell, administratrix of Richard Blackwell, dec'd.

The suit was brought on a note for $400, given to the plaintiff by Isaiah King, Thomas L. Veech and Richard Blackwell, bearing 10 per cent. interest from date, payable on or by the 1st of March 1839, and dated 19th November 1839. At the May term 1849, the defendants filed the statutory plea, and the parties went to trial. The plaintiff, Ridinhour, offered in evidence the note sued on, and the letters of administration granted by the clerk of Crawford county to the appellees as administrator of Rich'd. Blackwell, dated 23d December 1839, and here closed his case. Thereupon, the defendants offered in evidence, on their part, the notice of grant of letters of administration, signed by Wm. E. Hawkins, adm'r. alone, stating that the undersigned had obtained from the clerk of Crawford county court, letters of administration on the estate of Richard Blackwell, requiring all persons indebted to said estate to make immediate payment, and those having claims against the estate to present them within three years, or they would be barred. The affidavit of E. L. Edwards, publisher of the Jefferson Enquirer, states that this notice was published in his paper, first, on the 23d January, 1840, and thereafter for three weeks on the 30th January and 6th and 13th February. G. P. Wyatt was then introduced as a witness, whose testimony is fully set out in the bill of exceptions, the substance of which is, that Isaiah King was largely indebted; that some judgments had been obtained against him; that one Baker of Montgomery had brought suit against him for some nine hundred dollars, principal, and that the petition had been served by witness while sheriff of Gasconade; that one McKenney, had brought suit against him for about this amount; that witness, Ridenhour, and R. M. Wyatt, all being the intimate friends of King, went to him and advised him to take his property to Louisiana or Mississippi, sell it for the best price he could, and pay his debts, and if he could not pay them all to pay pro rata. Witness said he believed that King's property would not have paid more than two-thirds of the judgments obtained and the debts then sued upon. He further said that he was not certain that King would apply the money to the payment of his debts, but believed that Ridenhour had implicit confidence in King, that he would come back and pay his debts as far as his money would go. He further states, that King was indebted to his sister in-law, Mrs. Lowry, about $250; to himself about $100, and to his brother R. M. Wyatt, about $100, when they advis-

ed them to go. That there was a negro sold, prior to King's taking away his property, under execution against King, and that Ridenhour purchased the negro at constable's sale, King having furnished him the money to do so; which he gave up to King a short time before he left, and he took her off with the rest of his negroes. That King did not take his family at that time, but returned in some six or eight months after he left and staid at home some three or four months and then went away again, and some three or four months after King left the second time, his family left, and he has never resided in Gasconade county since. That King did not pay any of his debts on his return, and knows that the McKenney and Baker debts, Mrs. Lowry, R. M. Wyatt and himself, were never paid. King left a large amount of notes and accounts with one Thomas L. Veech to collect for him, and Veech said to witness that he had collected all the notes and accounts except a small amount. (The declaration of Veech was objected and excepted to by the plaintiff.) Witness further said, that Ridenhour had sued Veech, one of the securities, obtained judgment and had execution, but made nothing, as Veech was insolvent. That in 1845, Ridenhour asked witness if he believed the money could be made out of Blackwell's estate, or whether he believed it would be barred by limitation, and witness told him that he did not know, but that he had better advise with Mr. Scott of Potosi, as he was an old and experienced lawyer.

Here the case closed, the foregoing being all the evidence offered on either side.

At the instance of the plaintiff, the court gave to itself, sitting as a jury, the following instructions:

1. "That to enable the defendants to set up the bar of three years, they must show that within thirty days after the grant of letters, they gave the notice required by law to all creditors, and that the commencement of publication in the newspapers, after the expiration of the thirty days, is not sufficient."

2. "That said notice to be legal, should be signed by both the administrators, and if the court find it was signed by one administrator only, it is in law no notice at all."

3. "That the commencement to publish the notice in the newspaper thirty-one days after the grant of letters, will not operate as notice to the plaintiff."

4. "That in order to entitle the defendants to be discharged, it must appear that the plaintiff either extended the time of payment by a legal and valid agreement, founded upon a valuable consideration, without the knowledge of the security, or that he, without the knowledge of the security, released property upon which the law gave him a lien; but on the contrary, if the plaintiff honestly advised the principal to take his property to the best market, sell it for the best price, and return and pay his creditors pro rata, with the proceeds, that such a transaction would be fair and legitimate, and would not be injurious to the present defendant's intestate estate.

The defendants asked the following instructions, which were refused:

1. "That the omission to publish the notice to creditors of the grant of letters within thirty days, does not prevent the operation of the statute of limitations; it merely postpones the operation of the statute for the length of time the omission contained."

2. "That if the court, sitting as a jury, believes from the evidence, that Ridenhour, the plaintiff, advised King, the principal in the note, to remove his property from the State, and assisted him in doing so, that they thereby perpetrated a fraud upon the security in the note, and precluded himself from recovering against the securities."

3. "That the notice to creditors being signed by Hawkins alone, does not vitiate the notice."

4. "That the security of King had an interest in having King's property retained within the jurisdiction of the courts of this State, and if the jury believe from the evidence, that Ridenhour assisted in removing his property from this State, he has thereby diminished his chances for making the debt from the principal, and has thereby released the securities."

The court found a verdict for the plaintiff, upon which judgment was rendered, and the defendants prayed an appeal, and have brought the case to this court.

JOHNSON, for appellee.

From the instructions given and refused, it is manifest that the circuit court was called upon to decide the following points:

1. Whether the notice signed by the administrator *alone*, when there was an administratrix also, is any notice at all.

2. Whether, regarding it as a notice, the commencement to publish it thirty-one days instead of thirty after the grant of letters, does not deprive the administrators of setting up as a bar, the special limitation of three years.

3. Whether the acts of Ridenhour, under the circumstances, discharged the surety.

1. Upon the first point, it is insisted that the law laid down by the court, is correct. Where there is more than one executor or administrator, the law requires that a majority shall join in receipts and discharges, otherwise they shall be void. Adm'rs. art. 2, sec. 51, Stat. '35. Now, one is not a majority of two, therefore where there are but two administrators, they must both join to satisfy the statute, and render receipts and discharges valid. Why should both administrators, where there are only two, be required to sign, in order to make a valid discharge in fact, and both not be required to sign a notice, which, when published, is to operate as a discharge in law? In pleading, the rule is, that all the administrators must join. Hunt vs. Kenney, 2 Penn. 721; Bodle vs. Hulse, 5 Wend. 313; Chitty's Pl.

2. Upon the second point, the court laid down the law correctly. In the instruction given to plaintiff by the court, it is conceded in accordance with the opinion of this court, in Montelius & Fuller vs. Sarpy, 11 Mo. Rep. 237, that it would be sufficient, had the publication of the notice to creditors been commenced within thirty days after letters granted. The point is, that it was too late to commence after the thirty days had expired. In the computation of time, the English rule (which is also adopted in some of the courts of this country,) is, that where an act is to be done within so many days after a specified fact, the day of the fact is included. Starkie Ev. 1399, Title "Time;" Castle vs. Burdett, 3 T. R. 623; Glassington vs. Rawlins, 3 East. 407; Arnold vs. United States, 9 Cranch, 104, (3rd Cond. 330;) Pierpont et al. vs. Graham, 4 Wash, C. C. R.232. But perhaps the modern rule is to exclude the 1st. day and include the last. The letters were granted 23d Dec. 1839, and as Dec. has 31 days, if you include the 1st day, the 30 days expired on the 21st January 1840, if you exclude the first day, the 30 days expired on the 22d January, 1840. The publication of notice (if it can be regarded as such,) was not commenced until the 23rd January, two days too late by the English rule and one day too late by the modern rule. If the administrator could delay one day, he might five, and if five then 10, 20, 100 or any greater number. The following among many other cases turned upon the point, that a particular thing to be done was too soon or too late by *one day*. Castle et al vs Burdit et al, 3 T. R. 623. Lester vs Garland, 15 Vesey 246. Glassington et al vs Rawlins et al, 3 East. 407.

3. Upon the third point, it is proper to refer to the 4th instruction of plaintiff and the 2nd and 4th of defendants. It will be perceived, that the defendants put their right of discharge upon the ground that the plaintiff advised King to remove his property from the State, and they asked the court to declare the law that the advice was a fraud in the fact of the attending circumstances which showed that the advice was for the benefit of the surety. The evidence is that King was greatly indebted. Judgments had been already rendered against him and suits had been instituted against him which would shortly be reduced to judgment: that his property would not pay more than two thirds of the judgments rendered and the debts sued on—that G P Wyatt, R M Wyatt & Ridenhour, all being the intimate friends and likewise creditors of King, go to him, tell him to take his property to Louisiana or Mississippi, sell it for the best price and pay *all his creditors pro rata.*

There is no evidence of fraud or bad faith in this. They saw that others were before them; that King's property would soon be swept away by executions on other debts and they be cut out, and they advised him to do an act which would enable him to put them on an equal foot

ing with the other creditors. This was certainly for the benefit of the surety. The other creditors of King might have complained of this advice, but Blackwell could not. It would have been useless for Ridenhour to have attempted to make any thing by suit, because King's property would have been entirely consumed by the other creditors before he could have gotten judgment. The date of this transaction is not given by the witness, and therefore laches cannot be made out againt Ridenhour. If he was tardy in suing King, it was the province of Blackwell or his administrators to hasten him by notice in writing. As between creditors, and surety, there is no obligation of active diligence by the creditor against the principal.— The People vs Jansen, 7 John. Rep. 339. Nor will mere delay by the creditor, in calling on the principal, discharge the surety. Trent Navigation co., vs Harley, 10 East. 34 and notes to new edition. Peel vs Tatlock, 1 Bos. & Puller, 419. Ferguson vs Turner 7 Mo. Rep. 496. Nichols vs Douglas & McCullock, 8 Mo. Rep. 49. It cannot be pretended that Ridenhour made any agreement by which he tied his hands, because he made no agreement, but merely gave advice, and as to the fact, which the defendants in their 2nd & 4th, instructions ask the court to find, to wit, that Ridenhour assisted King to remove his property, nothing of the sort appears in the evidence.

The witness stated, that Ridenhour purchased at constable's sale, one of King's negroes, with King's money, and gave her up to him a short time before he left, and he took her off with the rest of his negroes. It does not appear that any importance was attached to this fact in the court below. No instructions were asked on either side, nor was the court called upon in any other manner to say what this fact amounted to and therefore this point cannot be raised now for the first time, because this court will only review the points decided by the court below. Steamboat Thomas vs. Erskine & Gore, 7 Mo. Rep. 213—Cornelius et al vs Grant et al, 8 Mo. Rep. 59. We may remark, however, that whether this purchase was before or after the advice given to King by the two Wyatts and Ridenhour, does not appear. Where there is nothing to the contrary, that presumption will be indulged, which will favor the opinion of the court below. It is not at any rate a matter of importance. Ridenhour acted as the mere friend and agent of King. By such agency, he acquired no lien upon the property, by which he could hold it for the payment of the note to which Beech & Blackwell were securities. The negro was neither pledged nor mortgaged to him. Had she been levied upon, while in Ridenhour's hands, as King's property, could he have held on in opposition to the levy upon the ground that King owed him? I think not. He certainly could, however, if his agency conferred a lien. It is admitted, that if a principal give up a lien against the debtor, without the knowledge and consent of the surety, the surety is discharged. But what liens are meant? Judge Carr in Chichester vs Mason, 7 Leigh. Rep. 256, says, that the liens which being given up by the principal will discharge the surety are "existing, complete and perfected liens," and he regarded even a fi fa delivered, as not such a lien, because it was not complete until levied. Upon looking into the books for instances of sureties being discharged by the creditor, giving up liens, we find that in Alcock vs Hill, 4 Leigh. Rep. 622; Chichester vs Mason, 7 Leigh. R. 244; Ferguson vs Turner, 7 Mo. Rep. 497; Baird vs Rice, 1 Call. 18, the execution was called in. In Ashby's admr. vs Smith's admr. 9 Leigh. Rep. 164, an attachment levied was released. In State vs Hammond, C. Gill. & John. 157; Jones vs Bullock, 2 Bibb 467; Rathbone et al vs Waner, 10 John. R. 587, the execution was stayed. I can find no case, where a creditor, by becoming agent for his debtor, purchasing property for the debtor with the debtor s money, and giving up the property, lost his remedy against the surety of the debtor to a pre-existing debt; nor do I believe such a case is in existence. Upon the whole, it is very eviden that Ridenhour acted for the benefit of the surety. Nothing could have been made out of King though the advice had not been given. It is not perceived that King's forfeiting the confidence reposed in him by Ridenhour, and failing to pay any of his debts altered the case. Riden hour took the only course to get any part of his debt. He could not attach King, for it appears that he and the two Wyatts were the first to suggest to him to take his property to a better

market and sell it and pay all his creditors pro rata.  In this way he hoped to realise something.  If King remained, he knew he would get nothing.

4. It does not appear from the copy of the record in this case, made out for my individual use, that there was any motion for a new trial.  I have not seen the record filed in this court, but presume that my record corresponds with the record in court, as they were both made out by the same clerk.  No motion having been made for a new trial, in the court below, the Supreme Court will not disturb the verdict for errors committed in the progress of the trial, or for erroneous instructions, therefore the judgment must be affirmed.  Higgins vs Breen, admr. of McNally, 9 Mo. Rep. 501.  Stevens vs Sexton use of Schenck, 10 Mo. Rep. 31.  Rhodes vs White, 11 Mo. Rep. 623.

RYLAND, Judge, delivered the opinion of the court:

The principal point for our adjudication in this case, arises from the instructions given and refused by the circuit court.  These instructions all appear in the above very full statement of the case.

We will notice those prayed for by the defendants and marked 2nd and 4th in the above statement.  These instructions were properly refused.  The testimony as preserved in the bill of exceptions does not warrant the giving of any instructions.  The merely advising a debtor by his creditor, to carry his negroes and horses to a better market, sell them there, and return and pay his debts ; and if he be unable to pay all, then pay *pro rata*, although that market be out of this State, never can be considered as a fraud upon or operate as a release to the securities of the debtor in a note to such advising creditor.  There is no error in refusing these instructions, nor in giving the 4th instruction asked for by the plaintiff as marked in the above statement.  These instructions bring up the same subject and are nearly the converse of each other.

No delay on the part of the creditor, will operate to release the secuty, which would not act as a bar for the principal.  In our State, securities have the power to require the creditor to bring suit, in order to hasten the collection of the debt; and a failure or neglect to sue as required, upon proper notice, will, after the lapse of a certain number of days, operate as a discharge of such security.

There appears nothing in the testimony of this case, requiring such instructions as the defendants prayed for as above.  We will pass over that objection and come to the main question, which is the statutory bar; the limitation to the plaintiffs right to recover, because he failed to present his demand within three years from the date of the letters of administration.

From the testimony, it appears that one administrator alone subscribed his name to the notice—that it was not signed by his co-administrator,

and that the letters were granted to two persons. This is also objected to, by the plaintiff as not being sufficient. We will not give an opinion on this point, as the notice is fatally defective in another important point deeming it, however, not amiss to say it is the best and safest course to have the notice subscribed by all or at least by a majority of the persons to whom the letters have been granted.

The notice to the creditors, in this case, was not published until after the expiration of the thirty days from the date of the letters. It was published on the 31st day after their date.

We hold this not a compliance with the statute; and as the law authorizing it has a tendency to destroy rights, we shall require a strict compliance with its provisions. This view of the case is not new; it has heretofore been sanctioned by this court. See Wiggins vs. Adm'r. of Lovering, 9 Mo. Rep. 265. We therefore find no error in the court below, giving the 1st instruction as above set forth for the plaintiff. The publication of the notice, must commence within the 30 days, from the date of the letters; but its entire publication need not be completed within the thirty days. It must, however, commence within that period. See Montelins and Fuller vs. Sarpy, 11 Mo. Rep. 237, and the case of Wiggins vs. Lovering's Adm'r. above cited. We find no error in giving this instruction or refusing the converse.

The judgment of the court in this case is wrong. It must be amended so as to be against the estate of the intestate, and not against the administrators personally. It must also be corrected so as to bear six per cent interest only, instead of ten. All judgments, under the present statute, concerning "Interest," can bear but six per cent, no matter what interest the instrument on which the judgment is founded bears. See Statute concerning Interest; Laws of Missouri, session 1846 and 7; page 63, secs. 1 and 2.

This case will be remanded to the circuit court, with directions to amend the judgment in the above particulars; in all else, it is affirmed.