# BANK OF ST. JAMES, Appellant, v. WALKER, Respondent.

### St. Louis Court of Appeals, June 4, 1908.

**NOVATION: Consideration.** An agreement of novation must be based upon a valuable consideration. Where a stranger to certain promissory notes agreed with the payee that he would pay them, but such promissor did not agree to pay him anything for assuming the notes, nor did the payee release the payor on the making of such promise, the promise was therefore without consideration and there was no novation.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville*, Judge.

AFFIRMED.

*Watson & Holmes* for appellant.

The court erred in giving instruction numbered 1 in the nature of a demurrer, at the close of plaintiff's case. Schermerhoon v. Herold, 81 Mo. App. 46; Smith v. Stokes, 72 Mo. 178; Larson v. Railroad, 110 Mo. 234. Plaintiff's evidence showed a sufficient consideration to support the contract sued upon; and the same was not within the Statute of Frauds. "Where a debtor arranges with his debter to pay the former's debt to the creditor of the latter, and such creditor consents and accepts the new debtor and releases the old one the novation is complete." Brown v. Gray, 74 Mo. App. 642; Garrison v. O'Donald, 73 Mo. App. 621. A valuable consideration has been defined by Chancellor Kent to be one that is either a benefit to the party promising or some trouble, or prejudice to the party to whom the promise is made. 2 Kent, Com. (2 Ed.), 466. "If the least benefit or damage be received by the promisor from the promisee, or a third person, or if the promisee

sustain any or the least injury or detriment it will constitute a sufficient consideration to render the agreement valid." Marks v. Bank, 8 Mo. 319; Wirt v. Sherman, 67 Mo. App. 172; Browlow v. Wolland, 66 Mo. App.. 637; Hooks v. Insurance Co., 69 Mo. App. 141.

*C. D. Jamison* and *T. J. Delaney* for respondent.

BLAND, P. J.—By change of venue the case was sent from the Phelps Circuit Court, where it originated, to the Greene Circuit Court, and was tried at the May term, 1907, of the latter court. At the close of plaintiff's evidence, the court gave an instruction in the nature of a demurrer to the evidence, whereupon plaintiff took a nonsuit with leave to move to set the same aside. Its motion to set aside the nonsuit was denied and the cause appealed here.

Briefly stated, the facts are that J. L. Lovelace, Edna B. Lovelace and Edgar Lovelace, bearing the relation of husband, wife and son, were engaged in a general mercantile business in the town of St. James, Phelps county, Missouri, under the name of the Lovelace Mercantile Company. In June, 1905, J. M. Gray and wife bought a half interest in the Lovelace Mercantile Company and in payment of a part of the purchase price, on June 17, 1905, executed their negotiable promissory note to J. L. Lovelace for the sum of $1,600, due the twelve months after date. A few days thereafter, the three Lovelaces indorsed the note and sold it to plaintiff bank, and at the same time executed two interest notes for $64 each, one due in six and the other in twelve months from date. The Grays soon became dissatisfied with the Mercantile business and, on August 2, 1905, sold their interest back to the Lovelaces and it was agreed between them that the Lovelaces would pay the $1,600 note to the plaintiff bank. To perfect this part of the agreement, J. M. Gray and J. L. Love-

lace went to the bank for the purpose of taking up the note and substituting in lieu thereof the note of the Lovelaces. The note not being due, the cashier was unwilling to release the Grays and proposed to write a memorandum to have the effect of making the Lovelaces principals on the note and the Grays sureties. This proposition was assented to and the following memorandum was written, signed by J. L. Lovelace and attached to the note:

"St. James, Mo., Aug. 2, 1905.

"It is understood between the parties hereto that J. M. Gray and M. J. Gray are securities, and J. L. Lovelace, Edgar Lovelace and Edna B. Lovelace are principals on a certain promissory note, dated June 17, 1905, due twelve months from date, 6 per cent interest from date, signed on the face, J. M. Gray, M. J. Gray, and on the back thereof J. L. Lovelace, Edgar Lovelace and Edna B. Lovelace."

The plaintiff bank continued to extend credit to the Lovelace Mercantile Company until early in 1906, when the company's indebtedness to the bank exceeded $4,000. The company owned considerable property and Mr. Holt, cashier of the bank, demanded security for the bank's debt as a condition precedent to the extension of further credit. J. L. Lovelace said he would see about it and in a few days went to the bank with defendant, who is a brother of Mrs. Edna B. Lovelace, and who stated to Holt and the assistant cashier, that he was there to take up the indebtedness of the Lovelace Mercantile Company; that he thought he was able to take care of it without executing any mortgages. All the company's obligations to the bank were placed before defendant. He pushed aside the $1,600 note and the second interest note for $64, saying, "We will not pay that now. We will take care of that when it comes due." All the other indebtedness of the company to

the bank, amounting to $3,164.07, he then and there paid. Shortly afterwards Mr. Holt learned that the Lovelaces were disposing of their property and he called J. L. Lovelace into the bank, told him what he had heard and that if he did not secure the note before he disposed of all his property he would force him into bankruptcy. Lovelace said he would see his brother-in-law, Mr. Walker. Mr. Walker appeared at the bank in a day or so, when, quoting from Holt's evidence, the following took place: "I invited him back into the private office, and he said to me that Mr. Lovelace had been up to see him and had told him about us threatening to throw him into bankruptcy if he didn't take care of that note. I told him that was true, that I didn't propose that the security should pay it if I could prevent it; and he said, 'Well, you must not do that, it won't do,' or something of the kind, and stated that he had taken over the property of the Lovelaces, or was intending to take it over, I am not certain which, and that he would assume the payment and see that that note was paid. I said, 'Mr. Walker, you are good, and that is agreeable on our part. I think, however, it would be better for you to sign the note.' He said, 'I wouldn't sign a note for my own brother, but I will see that that note is paid,' and I said, 'Very well, all in the world we want is our money. We don't want any trouble. They justly owe it, and it is unjust for us to try to collect it from the other security, the Grays, however, I want Mr. Miller, the assistant cashier, to hear this.' I then called Mr. Miller, the assistant cashier, into the private office and repeated, in substance what I have just stated, stating that Mr. Walker said he wouldn't sign a note for his own brother, but that he would assume payment and see that the note was paid at maturity, and that he had taken over, or was going to take over the property of the Lovelaces to protect himself in the matter, and we did, then and there,

accept J. Ellis Walker as payor of the note and looked to him for payment, and never looked to anybody else for it, and rested in perfect contentment, thinking it was a thorough understanding all around that he was to pay the note."

J. M. Gray testified that after he sold out to the Lovelaces he moved to Red Bird. Defendant wrote to Gray, stating that he wanted to see him and asking him to call at his office in Rollo, Missouri, the first time he came to town, and that he (Walker) had the J. L. Lovelace business to attend to or settle up and a note for $1,600 to the St. James bank to pay when due.

Walker refused to pay the note for $1,600, or the interest note of $64. The action is to recover on these two notes, brought upon the theory that Walker, for a good consideration moving from the Lovelaces, assented to by the bank, agreed to pay the notes. Walker's promise to pay the notes was made about February, 1906.

Plaintiff offered in evidence a deed from Edna B. and J. L. Lovelace, conveying to J. Ellis Walker, for an express consideration of $3,000, two tracts or parcels of land situated in Phelps county, Missouri; a deed conveying to John R. Matlock, trustee, a tract of land containing 210 acres in Maries county, Missouri, to secure to J. Ellis Walker the payment of the note of Edna B. and J. L. Lovelace for $2,000, of even date with the deed, to become due in six months from date, with eight per cent interest per annum; and also another deed of trust of the same date (February 23, 1906) conveying to the same trustee another tract of 112 1-2 acres of land in Maries county, to secure the payment to J. Ellis Walker of a note for $1,250, of even date with the deed and due to mature in six months from date. There is no evidence in the abstract showing, or tending to show, that either of these conveyances was made in consideration of any agreement or understand-

ing that defendant should pay the plaintiff bank the notes mentioned above, or either of them. The question in the case is whether or not there is any substantial evidence showing or tending to show that, upon sufficient consideration, defendant agreed to become substituted as plaintiff's debtor on the notes in suit. A substitution or novation takes place when a debtor makes an arrangement with his debtor, "based upon a valuable consideration, whereby the latter is to assume and pay the former's debt to his creditor, and before passing of the consideration or the completion of the transaction either of the two debtors explains the proposed transaction to the former's creditor and asks his consent thereto, and he consents to the substitution and agrees to accept the new debtor and releases the old one, the novation is complete." [Brown v. Croy, 74 Mo. App. 1. c. 467, and cases cited.]

The evidence is clear and convincing that defendant verbally agreed with plaintiff to pay the notes in suit, and that plaintiff accepted the promise and thereafter looked to defendant for payment; but there is no evidence showing that defendant was indebted to the Lovelaces, or that they paid or agreed to pay him anything in consideration of his assuming the payment of the notes; nor is there any evidence showing or tending to show that plaintiff released the Lovelaces or the Grays from their liability on the note. It is true, Holt, the cashier, told J. M. Gray, that defendant had assumed the payment of the $1,600 note and he (Gray) was released as surety thereon, but no formal release was executed. Defendant refused to give his own note to take up the notes in suit, at the suggestion of Mr. Holt, but satisfied Holt with his mere verbal promise to pay them at maturity. Plaintiff released no security it had by reason of the promise, nor did it release any of the parties to the note of their obligation to pay it and, as there is no evidence that defendant was the

debtor of the Lovelaces, or that he received or was to receive anything for his assumption of the notes, a substitution did not take place and the so-called contract of novation failed for want of any consideration. The judgment is therefore affirmed. All concur.