## H. H. ELLIOTT, Respondent, v. G. W. QUALLS, Appellant.

### Springfield Court of Appeals, July 7, 1910.

1. **CONTRACTS: Bills and Notes: Debtor and Creditor: Novation: Sufficiency of Evidence.** In a suit against a surety on a note the defendant claimed that the note had been given in payment for an engine, that the engine was afterwards sold to other parties, and that plaintiff had agreed to release the maker of the note and look to the other parties for pay for the engine. The evidence on this question is examined and *held* insufficient to show that there was a valid contract for a consideration whereby the last purchaser of the engine had been substituted as debtor in place of the original debtors, and *held further* that the court properly gave a peremptory instruction to find for plaintiff.

2. **———: Novation: Burden of Proof.** The essence of a novation is that all three parties assent to or concur in the agreement, whereby the new debtor is substituted and the old debt extinguished, and in a suit against the first debtor the burden is upon him to establish the novation.

3. **PRINCIPAL AND SURETY: Extension of Time: Payment of Interest: Bills and Notes.** The receipt of interest in advance for a definite period does not of itself show a valid contract for an extension of time for the payment of the debt, so as to release the surety. When there is other evidence to prove the agreement to extend the time, the payment of interest will be held to be sufficient consideration for such contract.

4. **———: ———: Release of Surety.** To discharge a surety by reason of an extention of time of payment, the creditor must do some act by which he deprives himself of the right to proceed at law for the collection of the debt. The mere forbearance of a creditor to prosecute his debtor does not discharge the surety on the obligation.

5. **BILLS AND NOTES: Practice: Evidence: Erasing Endorsement.** The holder of a note endorsed it to a bank, and afterwards took it back. In an action on the note by the holder it was held proper to permit him in the absence of proof of fraud to erase his endorsement before offering the note in evidence.

Appeal from Barry Circuit Court.—*Hon. F. C. Johnston,* Judge.

Elliott v. Qualls.

AFFIRMED.

*Fielding P. Sizer* for appellant.

(1) It is settled in this State that when the maker is released, the surety and all subsequent parties to the note are released. Stilwell v. Aaron, 69 Mo. 539; Brown v. Croy, 74 Mo. App. 466; Story on Promissory Notes, sec. 423. (2) If the least benefit or damage be received by the promisor from the promisee, or a third person, or if the promisee sustain any or the least injury, or detriment, it will constitute a sufficient consideration to render the agreement valid. Wirt v. Sherman, 67 Mo. App. 636; 2 Kent Com. (2 Ed.), 466. (3) The case should have been submitted to the jury on the question whether or not Elliott had accepted any other person or persons instead of Edwards, the principal, and thereby discharged defendant, who was surety for Edwards. McCroskey v. Murray, 125 S. W. 226; Seehorn v. Bank, 148 Mo. 256; Bank v. Hammond, 124 Mo. 181. (4) There is strong and positive evidence of an extension of time by the bank to plaintiff without knowledge or consent of the defendant, and such an extension relieves defendant. German Savings Assn. v. Helmick, 57 Mo. 100; Westbay v. Stone, 112 Mo. App. 411; Owen v. Bray, 80 Mo. App. 526; Commercial Bank v. Wood, 56 Mo. App. 218. (5) Defendant Qualls, if not already released before by the acts of Elliott, became now the surety to Elliott and was released when Elliott paid the bank interest in advance for an extension of time. Bank v. Wood, 56 Mo. App. 214; Wagman v. Jones, 58 Mo. App. 319; Real Estate Co. v. Clark, 84 Mo. App. 162.

*H. H. Bloss* for respondent.

(1) A substitution of one debtor for another did not take place in this case. Brown v. Croy, 74 Mo. App. 467; Bank v. Walker, 132 Mo. App. 117; Lum-

ber Co. v. Meffert, 59 Mo. App. 437; Snyder v. Curtley, 35 Mo. 423; Ridgley v. Robertson, 67 Mo. App. 45. (2) To constitute a novation the original obligation must be extinguished. Inman v. Burt Co., 108 N. Y. S. 210. (3) If a person for a consideration passing to him, assumes the debt of another, there is no novation on that account alone, but in such event, the creditor can recover from both or either. Lumber Co. v. Lumber Co., 39 Mo. App. 214; Duerre v. Ruedinger, 65 Mo. App. 407. (4) The mere payment of interest in advance and the endorsement to that effect on a note, is no evidence of extension of time to the principal. There must be evidence of a contract between the payee of the note and the principal obligor. Bank v. Mooreman, 38 Mo. App. 484; Russell v. Brown, 21 Mo. App. 51; Sidwell v. Aaron, 69 Mo. 539; Bank v. Love, 62 Mo. App. 380; Bank v. Rogers, 123 Mo. App. 569.

NIXON, P. J.—This action was commenced in a justice's court by H. H. Elliott filing therein on August 31, 1909, a promissory note for $125 bearing compound interest at eight per cent. per annum, dated August 8, 1901, payable to the order of H. H. Elliott twenty-one months after date, signed by M. W. Edwards and G. W. Qualls, the appellant. The suit was begun against both Qualls and Edwards, but was dismissed as to Edwards in the justice's court because the constable had returned the summons not served on Edwards. Defendant prevailed in the justice's court, but upon trial *de novo* in the circuit court, a peremptory instruction was given to find for the plaintiff the amount of the note sued on with interest as provided in the note, after deducting credits. The verdict was for $102 and judgment was entered thereon. Defendant has appealed.

I. Appellant insists that the court erred in giving the peremptory instruction. The evidence for the defense—upon the most favorable construction—is sub-

stantially as follows: That M. W. Edwards purchased
the engine of the plaintiff and gave the note in question
with defendant G. W. Qualls (his father-in-law) as
surety; that after using the engine some two months,
he went to another place leaving the engine standing
in Aurora, Missouri, but he secured one Parvin to dis-
pose of the same. That Parvin went with Edwards'
father to Elliott's place of business in Aurora to see
about the disposal of the engine; that Edwards' father
went in and conversed with Elliott and then came out
and went with Parvin to close a deal with one Keeler
and others who operated a mine, and the result was that
the engine was installed at the mine. Sometime after
this, M. W. Edwards returned to Aurora and saw El-
liott, and they had a conversation which is related in
M. W. Edwards' testimony as follows: "I said to him,
'I understand they have sold my engine.' He said, 'Yes,
some other parties bought it.' 'Well,' I said, 'then they
will pay you for it,' and he said 'Yes, sir.' Q. What
did he say about it? A. That is all he said, that he
would take those other parties. Q. What did he say he
would do with you? A. He said he would release me.
Q. Did you ever have anything more to do with the
engine? A. No, sir." Cross-examination: "Q. You
told him there you understood that the machinery had
been sold? A. Yes, sir. Q. And he told you that you
had been released from this note—that he had taken
the other parties? A. He said he would take these
other parties and release me. Q. Did you ask him for
your note then? A. No, sir. Q. Have you ever asked
him for this note? A. No, sir. Q. It did not occur
to you after he told you you were released from the note
that he should deliver the note to you? A. My father
was there and I supposed he would see after it and
get the note. Q. You were at his store when this
talk was had? A. Yes, sir. Q. He keeps his notes
and business there in the store? A. Yes, sir. Q. Yet
you knew he said he would release you? A. Yes, sir,

Q. You have never asked him for the note from that day to this? A. No, sir. Q. You never told him you were released—he has written you a number of letters about this? A. I have never received a scratch from him. Q. Whom did he say he had taken? A. Well, those fellows that bought the engine, Mr. Casey and Zumbrum."

J. S. Zumbrum, a witness for the defendant, stated that after the mine had burned down, he was in Elliott's place of business to get some powder, but that Elliott would not let him have it. "I said, 'I don't owe you anything.' He said, 'No, I don't know as you do, but the company up there owes me for that engine.' "

J. S. Mitchell, defendant's witness, testified that after the mine burned he purchased the engine for use in a greenhouse. "Q. Who from? A. Mr. Elliott. Q. Who claimed the engine then? A. Mr. Elliott told me he didn't own the engine but that he had a mortgage on it and it had been burned and was no account and he sold it to me." He then stated that he had never paid anything for it yet, but that he didn't deny owing for it, but this was stricken out.

G. W. Qualls, the defendant, testified that he signed the note as surety; that about a year before the trial and after the engine was burned up, Elliott notified him to pay for the first time and that he knew nothing of the deal whereby the mining company acquired the engine.

Keeler, a member of the mining firm, could not be found, and Edwards' father was dead.

It will thus be seen that defendant's contention that there was such a contract of release between the creditor and the principal debtor as to relieve the surety has utterly failed. What the arrangement was between Elliott and Edwards' father and the owners of the mine does not appear by any probative testimony. Edwards' father had died before the trial and it was he who negotiated the deal whereby the engine was installed at the mine. Keeler, the man with whom Elliott is said

to have closed the negotiations was not present at the trial. There was no one who could testify as of his own knowledge what the arrangement was; so that the only evidence regarding the transfer of the engine is embodied in M. W. Edwards' testimony as to what he says Elliott declared to him after the engine was installed at the mine. While declarations of a party against his interest are admissible, it still remains that the defendant in this case had the burden of proving that there was a valid contract or agreement for a valuable consideration whereby the owners of the mine were substituted as the debtors in place of the original obligors. [Citizens' Bank v. Moorman, 38 Mo. App. l. c. 485; Bank of St. James v. Walker, 132 Mo. App. 117, 111 S. W. 829.] There is no evidence of such a contract based upon such a consideration as the law requires; and the declarations of the plaintiff amounted simply to an expression of his opinion and were not evidence that such a contract had been legally consummated. It will be understood, of course, that we have reviewed only the defendant's side of the case. The plaintiff strenuously denied having made such declarations. The attempted defense, *i. e.*, that there was a novation, is therefore not established by the evidence. The essence of a novation is that all three parties assent to or concur in the agreement whereby the new debtor is substituted and the old debt extinguished. [29 Cyc. 1130, 1136; Lee v. Porter, 18 Mo. App. 377, 383.]

II. Appellant further contends that plaintiff at one time indorsed the note in question to a certain bank and that during said time plaintiff paid the interest in advance for an extension of time. Appellant insists that plaintiff thereby became the principal debtor, leaving appellant as a surety for him, and that the payment of interest in advance is a good consideration for an extension of time; that appellant was, therefore, released as surety. Without commenting at length on this

question, it is sufficient to say that the *only* evidence of these alleged facts appears indorsed on the note in the form of a mere notation that interest was paid on a certain date to a certain future date. It has been many times held that this is not enough. There must be evidence of a contract of extension, and the payment of interest in advance for a definite period will then be held to be a sufficient consideration for such contract. As said by BIGGS, J., in the case of Citizens' Bank v. Moorman, 38 Mo. App. l. c. 486: "It has been held by this court, and the Supreme Court, that the receipt of interest in advance for a definite period does not, of itself, furnish *any evidence* of a valid contract for an extension of time for its payment; and, unless there was other independent evidence tending to prove such contract, or unless such an agreement was fairly inferable from other circumstances established by the evidence, the issue as to whether the surety was discharged should not have been submitted to the jury. [Russell v. Brown, 21 Mo. App. 51; Stillwell v. Aaron, 69 Mo. 539; St. Joseph Fire & Marine Ins. Co. v. Hauck, 71 Mo. 465; Merchants' Ins. Co. v. Hauck, 83 Mo. 21; Hosea v. Rowley, 57 Mo. 357; Coster v. Mesner, 58 Mo. 549.]"

Before the filing of this suit, the note came back into Elliott's hands. By leave of court, Elliott was allowed, before offering the note in evidence, to erase his indorsement to the bank. This was permissible. [Dunlap v. Kelly, 105 Mo. App. l. c. 4, 78 S. W. 664.]

There was no valid extension of time between the creditor and the principal debtor. The note was long past due and the principal debtor or the surety could have paid it at any time. To discharge a surety by reason of an extension of time of payment, the creditor must do some act by which he deprives himself of the right to proceed at law for the collection of the debt. [Hartman v. Redman, 21 Mo. App. 124.] The mere forbearance of a creditor to prosecute his debtor does not discharge the surety on the obligation. [Hawkins v.

Ridenhour, 13 Mo. 125; Phoenix Mut. Life Ins. Co. v.
Landis, 50 Mo. App. 116.]

Some other objections have been urged by appel-
lant, but they are without merit. We have examined
with the utmost care every point presented and care-
fully reviewed the evidence. The appellant, having
failed in his proof, and failing to point to any material
error on the part of the trial court, the judgment must
be affirmed. All concur.