LAUMEIER, Appellant, v. HALLOCK, Respondent.

**St. Louis Court of Appeals, December 1, 1903.**

1. **NEGOTIABLE PAPER: Indorser: Waiver: Notice of Dishonor.** An indorser of negotiable paper may waive demand and notice, not only by express promise to pay after he knows the paper has been dishonored, but by acts from which it may be implied that he promised to pay, or led the payee to believe that he did not require notice.

2. ———: ———: ———. Where the indorser of a negotiable note procured several extensions of the same, paid interest on it and part of the principal and paid taxes on the real estate which was mortgaged to secure the note, but did all those things as the agent of another who was primarily liable, it does not amount to a waiver of notice and demand at the time the note was dishonored.

3. ———: ———: **Grantee Assuming Incumbrance: Principal and Surety: Release of Surety by Extension.** When the grantee in a conveyance of real estate, incumbered by a mortgage, assumes the payment of the debt secured by the mortgage, he becomes, as between himself and the makers of the note, principal and they become sureties, and where he is granted an extension of time for payment of the note, without the knowledge of the makers, they are released from liability thereon.

4. ———: ———: ———: **Release of Makers Releases Indorser.** Where makers of a negotiable note, secured by mortgage on real estate, who have become sureties as to the purchaser assuming the payment, are released by extension without their knowledge, the indorser is thereby released, because as to him they remain makers.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*F. M. Estes* for appellant.

(1)   The court erred in its instructions.   Mensi v. Osborn, 5 Mo. 544; Wilson v. Houston, 13 Mo. 140; · Dorsey v. Watson, 14 Mo. 59; Clayton v. Phipp, 14 Mo. 554.   (2)   The court erred in refusing instruction offered by plaintiff.   Klosterman v. Kage, 39 Mo. App. 60;   Banking Co. v. Blell, 56 Mo. App. 410.   (3)   The acts and promises of the defendant justified plaintiff in believing that demand and notice were unnecessary. Tailer v. Furnishing Goods Co., 24 Mo. App. 420.

*F. J. McMaster* for respondent.

(1)   A valid agreement by the mortgagee with the grantee of the mortgagor to extend the time of payment made without consent of the mortgagor discharges the latter, and this doctrine is supported by the great weight of authority.   Wyman v. Jones, 58 Mo. App. 313; Nelson v. Brown, 140 Mo. 580; Donovan R. E. Co. v. Clark, ·84 Mo. App. 163.   (2)   Where the holder of a note releases the maker such rule operates as a discharge of all subsequent parties thereto, including the indorser thereon.   And whether or not the indorser assents to the discharge is of no consequence.   Brown v. Croy, 74 Mo. App. 465; Eggeman v. Henschen, 56 Mo. 123; Bank v. Schumucker, 7 Mo. App. 171.   (3)   If proper steps are not taken to fix the liability of an indorser, and thus convert his conditional liability into an absolute agreement, he is discharged, unless, with a full knowledge of all the facts of his release, he promises to pay the debt, or does acts from which such promises can be clearly and unmistakably inferred.   Faulkner v. Faulkner, 73 Mo. 327. (4)   Acting as agent of the grantee of the mortgagor, who has become primarily liable for the payment of the note, by an indorser, and thereby aid in collection of the interest for the holder, does not waive protest or revive liability.   Wilson v. Houston, 13 Mo. 150; Isham v. Mc-

Clure, 58 Iowa 515. (5) Evidence of waiver of protest must be clear and distinct, and will be strictly construed. Faulkner v. Faulkner, 75 Mo. 327; Freeman v. O'Brien, 38 Iowa 406.

GOODE, J.—Action against the respondent as indorser of a promissory note. Said note was dated February 3, 1901, was for $2,000, due three years after date, payable to the order of Leander Hallock, the respondent, and bore interest at the rate of ten per cent per annum. It was executed by John A. Laird and Belle W. Laird, under these circumstances: John A. Laird purchased a parcel of ground in St. Louis from a man by the name of McClain. Laird wanted to build a house on the lot and applied to Stewart & Company, a firm of real estate brokers, to borrow the money. Hallock was a member of that firm and procured the loan through Henry Hiemenz. The note in suit was given for the loan, being made payable, as stated, to Hallock, and secured by a deed of trust on the lot. Christine Laumeier advanced the money which Hiemenz lent, and the note and deed of trust were immediately turned over to her. A few months after these transactions, to-wit, June, 1901, Laird sold the premises to Elias Yerkes, conveying the title by a deed which recited that Yerkes assumed and agreed to pay as part of the purchase price of the lot, the debt of $2,000 which incumbered it. At the time of his purchase Yerkes executed a second deed of trust for $1,300, payable in monthly installments of thirty dollars each. The arrangement was that he was to pay eight of these monthly installments each year in reduction of the balance of the purchase price, over and above the assumed incumbrances and to pay four of them, or $120 each year, in liquidation of the interest on said incumbrance.

When the original note first matured in 1894, it was renewed for three years; when it fell due in 1897, it was again renewed for two years, and four interest notes

were executed by Yerkes payable to the order of Philip Betz, for the semi-annual interest during the two-year extension.   At the end of that time the note was again extended for three years, Yerkes executing six interest notes payable to the order of Henry H. Laumeier, son of the appellant.   All said interest notes were indorsed and delivered by Betz and Henry Laumeier to the appellant.

The evidence shows that John A. and Belle Laird knew nothing of these extensions of the original note, and that no demand for payment was made of them at maturity, or notice of the dishonor given to Hallock. At the expiration of the last extension Yerkes still failed to pay; so the deed of trust securing the note was foreclosed and the property sold for $1,000, which sum was credited on the note and the present action begun against Hallock for the balance.   This attempt to hold Hallock as indorser, in the face of the fact that there was no demand for payment of the makers or notice of dishonor given, is based on the assumption that Hallock himself procured the extensions for his own benefit; wherefore, it is contended he waived demand and notice.

An indorser of negotiable paper may waive demand and notice, not only by an express promise to pay after he knows the paper has been dishonored, but by acts from which it may be implied that he promised to pay, or led the payee to believe he did not require demand and notice.   Wilson v. Huston, 13 Mo. 146; Dorsey v. Watson, 14 Mo. 59; Clayton v. Phipps, 14 Mo. 399; Banking Co. v. Blell, 57 Mo. App. 410; 2 Randolph, Commercial Paper, secs. 1383 to 1391.   When the claim of implied waiver is put forward, the question is, what was the intention of the indorser and payee in doing the acts asserted to constitute the waiver?   Were the acts such that the payee was justified in concluding the indorser relinquished his right to demand notice?   In the present case the appellant's counsel requested the following declaration of law, which was refused:

"If the court finds from the evidence that the defendant Hallock, when the note sued on became due and payable in 1894, requested that the same be extended and same was extended at his request; and that said note was extended at the request of the defendant, in 1897; and that defendant made the arrangement whereby said note was extended in 1899; and if the court finds that defendant Hallock requested and arranged to have said note extended each and every time it became due and payable; and that said note was extended at such times at the instance and request of defendant; and that at the expiration of the last period of extension in 1899, said defendant Hallock, knew that said note was not paid; and that he paid at that time all interest which had accrued, the back taxes due on the property and paid $200 on the principal, then said defendant, Hallock, is liable on said note."

That declaration was justly refused because every fact hypothecated in it might be true without compelling the finding that Hallock waived demand and notice. What Hallock did toward procuring the extension and paying two hundred dollars, was done, he testified, as agent for Yerkes, to prevent the latter's home from being sold under a foreclosure. He swore, too, that the appellant knew he was acting for Yerkes, and was distinctly informed that he would no longer stand bound to pay the note. Yerkes' testimony corroborates Hallock in some measure; and it is certain that Hallock refused to indorse the interest notes which were given to the appellant when the several extensions were granted. Now if Hallock was acting all along as Yerkes' agent and Mrs. Laumeier knew he was, Hallock could have done and known everything recited in the above declaration of law as sufficing to fasten liability on him, without intending to waive his rights as indorser, or leading Mrs. Laumeier to believe he waived them.

An instruction was asked and refused in Wilson v. Huston, supra, which stated certain facts that were sup-

posed to retain Huston's liability as indorser of a note by showing he had waived demand and notice.   Huston contended he had acted as agent; and, in commenting on the refusal of the instruction, the Supreme Court said:

"There are circumstances and facts not alluded to in the instruction, which would control the liability of Huston upon the hypothesis stated. He may have taken the note as a mere agent for collection, and without considering himself as having any personal interest in the result.   He may have taken it after it was due and after his release had resulted from the failure of the plaintiffs to make a demand upon the Smiths.   In either event he was no longer responsible, and his acting as agent for collection, either *ex gratia* or for reward, would not revive his liability."

So here the circuit court was justified in refusing the declaration prayed by the appellant, because it made Hallock answerable  on the theory  that the hypothecated facts amounted to an absolute waiver of his rights as an indorser, regardless of the possibility that he was merely an agent for Yerkes and known to be by Mrs. Laumeier.

But there is more:   The makers of the note, the two Lairds, were released by the extensions granted to Yerkes without their knowledge or consent.   When they conveyed the property to Yerkes and the latter assumed payment of the incumbrance on it, he became as between him and the Lairds, the principal debtor and they became sureties; and when Mrs. Laumeier granted Yerkes an extension without their knowledge, the effect was to discharge them from liability on the note.   Nelson v. Brown, 140 Mo. 580.   But the relation between the Lairds and Hallock was then that of makers and indorser and the release of the makers released the indorser.   Eggmann v. Henchen, 56 Mo. 123; Brown v. Croy, 74 Mo. App. 462.

The theory was put forward on argument that Hallock was really the principal maker of the note and that

the Lairds and Yerkes acted merely for his accommodation. This theory is unsustained by any proof.

The judgment was for the right party and is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.