## CITIZENS BANK OF SENATH, Respondent, v. W. H. DOUGLASS et al., Appellants.

**St. Louis Court of Appeals, December 2, 1913.**

1. **APPELLATE PRACTICE:** Harmless Error. A ruling of the trial court striking out defenses pleaded in the answer will be disregarded on appeal, where the case was tried as though such ruling had not been made.

2. **NOVATION:** Elements. In order to establish a novation, the creditor must consent to the discharge of the original debtor and must accept the new debtor in his stead, and there must be a previous valid obligation, an extinguishment of such obligation, and an agreement by all the parties to the new contract, which must be valid.

3. ————: Bills and Notes: Assumption of Note by Third Person. An agreement between a person who had entered into a valid agreement with the maker of a promissory note to assume the payment of the note, and another person, by which the latter, in turn, for a valuable consideration, agreed to pay the note, was not a novation, since the maker was not a party to such agreement nor did the payee agree to release the maker and substitute some one else in his stead.

4. **PRINCIPAL AND SURETY:** Assumption of Obligation by Third Person. A contract by which a person agrees, for a valuable consideration, to assume an obligation owing by the other contracting party creates the relation of principal and surety, as between them, even though the person to whom the obligation was owing was not a party to the agreement.

5. **CONTRACTS:** Contract for Benefit of Third Party: Right to Enforce. A contract between two or more persons for the benefit of a third person may be enforced by the latter, if he thereafter adopts it, even though he had no knowledge of it at the time it was made.

6. **MORTGAGES AND DEEDS OF TRUST:** Effect of Assumption of Mortgage by Grantee: Principal and Surety. Where a grantee accepts a conveyance, covenanting to assume and pay the grantor's promissory note secured by a mortgage on the premises, executed by the grantor, not only does the grantee become the principal debtor and the grantor a surety, as between themselves, but the owner of the mortgage, after notice of the assumption, is bound to recognize the suretyship and to respect the rights of the surety in his subsequent dealings with

the parties, and any act on his part which, in law, operates to release a surety, will release the grantor.

7. ———: ———: ———: Parol Promise: Statute of Frauds. An agreement whereby a grantee assumes and agrees to pay a promissory note secured by a mortgage executed by the grantor need not be incorporated in the conveyance, but may be entirely oral; such an agreement not being a promise to pay the debt of another, but an original undertaking, and hence not within the Statute of Frauds.

8. PRINCIPAL AND SURETY: Assumption of Obligation by Third Person: Rights of Obligee. Where a creditor accepts a promise of a third person, made to the debtor, for a valuable consideration, to discharge the latter's obligation, the creditor is bound to respect the contract of suretyship between them; the right of a party under a contract between others, made for his benefit, being dependent upon and subordinate to the terms of the contract.

9. BILLS AND NOTES: Principal and Surety: Assumption of Note by Third Person: Discharge of Surety. Where a person who had entered into a valid agreement with the maker of a promissory note to assume the payment of the note made an agreement with another person, by which the latter, in turn, for a valuable consideration, agreed to pay the note, and the payee not only accepted the promise of the last mentioned person, but took an active part in inducing him to assume the debt, and dealt with him as a principal, without consulting the maker, *held* that the payee having elected to accept such person as the primary debtor, could look to the maker merely as a surety, and any act on his part which would operate, in law, to release a surety would release the maker.

10. BANKS AND BANKING: Appointment and Removal of Cashier. Under Sec. 1112, R. S. 1909, the board of directors of a bank have the sole power to appoint or remove a cashier.

11. ———: Powers of Cashier. A cashier of a bank who had been duly appointed by the board of directors had power to act and bind the bank as cashier, notwithstanding he spent the greater portion of his time in another city, where he kept in communication with the bank and supervised and directed its most important affairs.

12. ———: ———. The cashier of a bank has prima-facie authority to extend the time of payment of negotiable paper; this being particularly true where he has virtual control of the bank's entire business.

13. ———: ———: Imputed Knowledge. The cashier of a bank, in his private capacity, entered into a valid contract with

the maker of a promissory note payable to the bank, to assume the payment of the note, and subsequently a third person, for a valuable consideration, agreed with the cashier to pay the note, and the cashier agreed, on behalf of the bank, to extend the time of payment of the note for the third person. *Held*, that the bank was bound by his agreement, if he had authority to act, and his knowledge was imputable to it.

14. **BILLS AND NOTES: Principal and Surety: Assumption of Note by Third Person: Discharge of Surety: Extending Time of Payment.** Where a person who had entered into a valid agreement with the maker of a promissory note to assume the payment of the note made an agreement with another person, by which the latter, in turn, for a valuable consideration, agreed to pay the note, and the payee, by virtue of its course of dealing with the last mentioned person, accepted him as the primary debtor and the maker as a surety only, the maker would be discharged as such surety if the payee made a valid agreement with such person to extend the time of payment of the note for a definite period, notwithstanding the note provided that the time of payment might be extended without notice; the maker's liability being measured by the new obligation, and not by the original instrument.

15. ——: **Accommodation Makers: Primary Liability.** Under Sec. 10161, R. S. 1909, persons who sign a promissory note as joint makers are primarily liable, even though they sign merely for the accommodation of one of their number and that fact is known to the payee.

16. ——: **Principal and Surety: Assumption of Note by Third Person.** Where a third person made a valid agreement to assume the payment of a promissory note and the payee accepted him as the primary debtor, Sec. 10161, R. S. 1909, would not prevent the maker from becoming a mere surety; the relationship of the parties arising independently of the original instrument.

17. ——: ——: **Discharge of Surety: Extending Time of Payment.** In order for an extension of time of payment of a promissory note to operate as a discharge of a surety, such extension must be supported by a valid consideration and be binding upon the creditor, so that he is thereby precluded in the meantime from proceeding to enforce payment of the note; and this rule is in no wise altered by Sec. 10090, R. S. 1909.

18. **TRIAL PRACTICE: Question for Jury.** Where the evidence is conflicting, the question is for the jury.

19. **ESTOPPEL: Estoppel in Pais.** An estoppel *in pais* is a right arising from an act, admission, conduct, or, under some circumstances, mere silence, which has induced a change of position in accordance with the real or apparent intention of the party against whom it is invoked.

20. **BILLS AND NOTES: Principal and Surety: Assumption of Note by Third Person: Estoppel to Proceed Against Maker.** A person who had entered into a valid agreement with the maker of a promissory note to assume the payment of the note made an agreement with another person, by which the latter, in turn, for a valuable consideration, agreed to pay the note. The payee not only accepted the promise of the last mentioned person, but took an active part in inducing him to assume the debt, and dealt with him as a principal, without consulting the maker. *Held*, that, while the acts of the payee constituted a valid defense in favor of the maker, the payee was not estopped from proceeding against the maker, since the maker did not alter his position to his injury in reliance on the payee's conduct.

21. ———: ———: ———: **Discharge of Surety.** Where the maker of a promissory note became merely a surety, owing to an agreement whereby a third person assumed the payment of the note, and this agreement became binding on the payee by virtue of his course of dealing with the parties, an extension of time of payment by the payee for a definite period would not entitle the maker to a cancellation of the note, although it would operate to discharge him from any liability, since the note evidenced the obligation assumed by the third person.

22. ———: **Principal and Surety: Discharge of Surety: Legal Defense: Trial by Jury.** In an action on a promissory note, defendant pleaded that, owing to an agreement whereby a third person assumed the payment of the note, which, by reason of the payee's course of conduct, became binding on it, defendant had ceased to be primarily liable as maker and had become merely a surety, and that, by agreeing to extend the time of payment for such third person for a definite period, plaintiff payee had discharged defendant as such surety, and prayed that the note be cancelled and returned to him. *Held*, that this defense was a defense at law and hence was triable to a jury.

23. **BANKS AND BANKING: Powers of Cashier: Instructions.** The cashier of a bank, in his private capacity, entered into a valid contract with the maker of a promissory note payable to the bank, to assume the payment of the note, and subsequently a third person, for a valuable consideration, agreed with the cashier to pay the note, and the cashier agreed,

on behalf of the bank, to extend the time of payment for the third person. In an action on the note, the maker defended on the theory that, by reason of the third person's assumption of the note and the bank's acceptance thereof, defendant became merely a surety, and that he was discharged as such surety because the bank agreed to extend the time of payment for the third person. At the instance of plaintiff, the court instructed the jury that the cashier could not release the principal on the note, and accept another as payor, in lieu of him, without written authority from the board of directors, and that if the cashier undertook to do so, the bank was not bound thereby, unless it afterwards adopted and ratified the transaction. *Held*, that the instruction conveyed an erroneous impression as to the authority of the cashier to bind the bank, under the facts in evidence.

24. **INSTRUCTIONS: Submitting Defense Not Pleaded.** An instruction which relates to a defense not pleaded is erroneous.

Appeal from Dunklin Circuit Court.—*Hon. W. S. C. Walker*, Judge.

REVERSED AND REMANDED.

*Tribble & Smith* and *W. H. Douglass* for appellants.

(1)   The court erred in sustaining a part of plaintiff's motion to strike out and striking out that part of plaintiff's petition relating to the assuming of this note in controversy by third parties.   Leckie v. Bennett, 160 Mo. App. 145.   The petition alleged that plaintiff recognized as payor of this note, the parties assuming payment and contracted with them to extend the time of payment. (2) The court erred in admitting the note in evidence over defendants' objection because it was not the note sued on.   It amounted to a failure of proof.   Gray v. Race, 5 Mo. App. 553; Marcum v. Smith, 26 Mo. App. 460; Halpin M. Co. v. School Dist., 54 Mo. App. 371; Ringer v. Holtzclaw, 112 Mo. 519.   (3)   The amended answer tendered an equitable issue and thereby converted this action into an equitable proceeding, and the court was thereby required to try the

equities thus tendered before trying the legal defense set up in the answer. Martin v. Turnbaugh, 153 Mo. 127; Withers v. Railroad Co., 226 Mo. 373. (4) The court's findings in equity are not binding upon the appellate court, but the case is practically tried by the appellate court *de novo* upon the record, irrespective of any rulings of the trial court. Plummer v. Knight, 156 Mo. App. 321. (5) The court erred in refusing to allow the defendants to read the letters which passed between Caneer, while in St. Louis, and Storey, in charge of plaintiff bank at Senath, Missouri, after June 1, 1909, concerning the business of the bank, and also the letters which passed between Caneer, while in St. Louis and Chapman, while in charge of plaintiff bank at Senath, Missouri, concerning the business of the bank. The letters are competent on the question of agency. Clark & Marshall on Private Corp., page 2038, Sec. 663; same, page 2168, Sec. 710; same, page 2188, Sec. 716; same, pages 2191-4, Sec. 717; same, page 507, Sec. 190b; same, page 2161, Sec. 708; Clark & Skyles on Agency, pages 166-7, Sec. 64; same work, pages 144-5, Secs. 56 and 57; same, page 275, Sec. 109; same, page 318; Sec. 139; same, pages 335 to 9, Sec. 141a and b; same, pages 140-3, Sec. 55; Plummer v. Knight, 156 Mo. App. 321; Smith v. Richardson, 77 Mo. App. 422. (6) The court erred in allowing Caneer, the alleged agent or cashier of plaintiff bank, through whom the transactions in controversy were claimed to have been made, to testify that he had no authority to make the contract to extend the time of payment on said note or to do the other things alleged in the answer to have been done by him for said plaintiff bank, for the reason that his own admission in writing shows that he attempted to extend the time of payment of said note, or offered to do so, and he is therefore estopped to deny his authority. 63 Mo. App. 491-1; 179 Mo. 421; 31 Cyc. 1244; 105 Mo. App. 393; Clark & Marshall on Private Corporations, page 2174, Sec. 713a.

(7)   Instructions 1, 2 and 3, given by the court for plaintiff over defendants' objections, improperly declare the law.   Leckie v. Bennett et al., 160 Mo. App. 145; Clark & Marshall on Private Corp., p. 2157, Sec. 705; Clark & Marshall on Private Corp., p. 2172, Sec. 712.   And are inconsistent and irreconcilable with instructions 4 and 5 given for defendants.   (8)   The court erred in giving plaintiff's instruction No. 5, over defendants' objection.   Marshall v. Bank, 76 Mo. App. 92; Clark & Marshall on Private Corp., p. 2188, Sec. 716.   (9)   Instructions 2, 3, 5 and 8, offered by defendants, properly declared the law under the evidence in this case.

*Bradley & McKay* for respondents.

(1)   The trial court did not err in sustaining plaintiff's motion to strike out a portion of defendant's answer and appellant's citation of authority does not sustain their position, but on the contrary supports the court's action.   Leckie v. Bennett et al., 160 Mo. App. 145; Babbitt v. Railway Co., 149 Mo. App. 439. (2)   The attempted plea of estoppel is wholly insufficient to constitute an estoppel, either in law or equity, as it does not charge that any acts of the plaintiff induced the defendants to change their position, to their detriment.   This is a necessary allegation of an estoppel and should have been both alleged and proved.   Leckie v. Bennett et al., 160 Mo. App. 162; Blodgett v. Perry, 7 Mo. 263.   (3)   The trial court, having heard the witnesses and observed their demeanor and examined the mass of testimony, and exhibits and correspondence, between the parties, being therefore in a position to judge of the credibility of the testimony, the burden of proof also being on the defendant, and the trial court with the whole record before it having found for the respondent and against the appellants, on their purported equitable defense, this court will adhere to

such findings, even though holding that it has a right to review the findings of fact, on the incomplete record, in this case, especially when as here there was ample evidence to sustain the findings of the trial court. Mathias v. O'Neal, 94 Mo. 530; Douglass v. The Douglass Bagging Co., 94 Mo. 234; Warren v. Nickels, 72 Mo. App. 486; Taleferro v. Evans, 160 Mo. 380; Smith v. Barr, 166 Mo. 406. (4) If Caneer agreed to extend the time of payment of said note sued on in this cause, and had full authority to do so, from the plaintiff bank, all of which respondent denies, it would not have released defendants, appellants herein, for the note is one which provides that the time may be extended without notice, and all parties to said note are joint makers, and such extension was fully authorized and would not constitute a novation as appellants contend. Leckie v. Bennett et al., 160 Mo. App. 159; Babbitt v. Railway Co., 149 Mo. App. 439. (4a) Both the amended and supplemental answers ask for a cancellation and return of the note sued on by virtue of the legal defense of novation and the equitable defense of estoppel, which would in no event transpose an action at law to an action in equity. Again, the prayer is no part of the petition, and nowhere in the answer are sufficient facts pleaded to transpose this action at law to one in equity. Easley v. Prewitt et al., 37 Mo. 361; Brown v. Home Savings Bank, 5 Mo. App. 113; 16 Ency. of Pl. & Pr., page 776. The fact that an equitable defense is interposed in an action at law, it has been held, does not convert the suit from an action at law to one in equity. Wolf v. Schaffer, 74 Mo. 154; Carter v. Prior, 78 Mo. 222. The circuit court may administer both legal and equitable rights and remedies in the same action, and is armed with discretionary powers to direct separate trials where the nature of the issues on the pleadings require them, or where the parties demand separate trials, before the trial is begun, and it would be discretionary with the court which cause

is tried first, unless the parties to the action demanded the equity branch tried first, which was not done in this cause. Stones v. Perkins, 217 Mo. 606; Smith v. Barr, 166 Mo. 392; Spur v. Burlingame, 61 Mo. App. 75. (5) The instructions 1, 2 and 3 given by the court for the plaintiff properly declares the law and it was no error to give them, but would have been error to reject them. Leckie v. Bennett et al., 160 Mo. App. 145. If the instructions 4 and 5 given for the defendant are inconsistent with plaintiff's instructions 1, 2 and 3, which respondent denies, and plaintiff's instructions properly declare the law, it was still not error to give them, for the defendants having had the advantage of an erroneous instruction, given at their request, cannot now complain. Baker v. Railroad Co., 122 Mo. 597; Reardon v. Railroad, 114 Mo. 384; Wilkins v. Railroad, 110 Mo. 105. (6) The court did not err in giving the plaintiff's instruction No. 5. It properly declares the law, and appellant's citations of authority sustain the court's rulings. Marshall v. Bank, 76 Mo. 92; R. S. 1909, Sec. 1112; People's Savings Bank v. Hughes, 62 Mo. App. 576. (7) Instructions 2, 3, 5 and 8 offered by the defendants do not properly declare the law, besides there was no evidence upon which to base said instructions, and hence the court properly refused them.

ALLEN, J.—This is an action by plaintiff bank upon a promissory note executed by the defendants. Plaintiff had judgment for the amount remaining unpaid on the note, with accrued interest thereon, and the defendants have appealed.

The note in suit was originally for the sum of $2250, dated January 10, 1906, due March 1, 1906, and payable to the order of plaintiff. It bore interest at the rate of eight per cent per annum, and contained the following provision: "Makers and endorsers of this note hereby severally waive presentment of payment

and notice of nonpayment, protest and consent that time of payment may be extended without notice.'' A notation appeared upon the back of the note to the effect that the maturity thereof had been extended to July 1, 1910, ''interest paid.''

The petition declares upon the note, admits the payment of $700 thereon on November 30, 1908, and prays judgment for $1550, with interest at the rate of eight per cent per annum from March 1, 1909.

The amended answer admits the execution of the note by defendants; avers that, on November 30, 1908, not only $700 was paid upon the principal, but that all interest accrued to that date was paid thereon, leaving a balance due at said date of $1550. And it is averred that defendants Jas. M. Douglass and A. T. Douglass were but accommodation makers for defendant W. H. Douglass, and as between themselves and the latter were sureties, and that this was known to the plaintiff.

The amended answer then proceeds to set up in detail certain facts, by reason of which it is averred that these defendants were released from all liability on the note. In substance, these averments are, that the payment of the note was first extended to July 1, 1909; that, on July 15, 1909, defendant W. H. Douglass entered into a contract with one Gillespie and one Caneer, the latter being then the cashier of plaintiff bank, whereby said Gillespie and Caneer, for certain valuable consideration, assumed and agreed to pay the note at and when the same should become due and payable, in accordance with the extension made thereof; that, on the following day, to-wit, July 16, 1909, a contract was entered into between said Gillespie and Caneer on the one hand and one Gardner on the other, whereby, for like valuable consideration, the said Gardner in turn assumed and agreed to pay the note; and that as an inducement to the said Gardner

to so assume the payment thereof the said Caneer, acting for and on behalf of plaintiff bank, and being clothed with full power and authority in the premises, agreed on behalf of plaintiff to extend the time of payment thereof to September 1, 1909, and that plaintiff bank did so extend the time of payment of the note, without the knowledge and consent of defendant, W. H. Douglass, or of his codefendants; that the plaintiff thereafter dealt with and recognized the said Gardner as payor of the note, and fully ratified the said acts of its alleged cashier in the premises.

The foregoing are the essential averments of the answer, as well as of a so-called supplemental answer filed, and it is averred that the facts pleaded constitued a novation, and gave rise to an equitable estoppel against plaintiff.

The reply controverted the facts pleaded in defense.

The evidence shows that A. A. Caneer had been the cashier of plaintiff bank, residing at Senath, Missouri, but that he became interested with the defendant W. H. Douglass, Gillespie, Gardner and others in promoting certain insurance companies having offices in the city of St. Louis; that early in June he came to the city of St. Louis on account of his connection with these insurance companies, and that for some months he spent the greater portion of his time at the latter place; that, upon his leaving Senath, one O. H. Story was called upon to perform the active duties of cashier in the bank, though the records of the meetings of the board of directors of the bank show that Story was not elected cashier until August 16, 1909, and no resignation of Caneer as cashier appears to have been tendered or acted upon in the meantime. During this period it seems that Caneer, while in the city of St. Louis, represented and acted for the bank in many particulars, apparently having full power and authority so to do; and various letters of his were put in evidence showing

that he continued to exercise supervision and control over the affairs of the bank, though certain of his letters offered by defendants were excluded. It was shown that Caneer, while acting as cashier, conducted practically all of the important business of the bank himself, and that he seldom consulted either the board of directors or a finance committee thereof.

On behalf of defendants it was shown, by the testimony of defendant W. H. Douglass and that of Gillespie, that prior to June 15, 1909, the relations between the said Douglass and Gardner had become strained, Douglass claiming that Gardner was improperly applying funds of the insurance companies in question; that this matter was brought to a crisis by defendant W. H. Douglass notifying a bank or banks not to pay out certain funds on checks signed by Gardner; that defendant W. H. Douglass was unwilling to continue his connection with the companies, under the circumstances prevailing, and that about this time Caneer and Gillespie undertook to arrange a settlement or adjustment of matters between W. H. Douglass and Gardner, whereby the former would deliver to Gardner certain stock, surrender certain contracts, and release his rights thereunder, and resign from a board of directors, and that, in consideration thereof, Gardner would assume the payment of the note here in suit and another upon which defendant Douglass was liable at the Union Station Bank of St. Louis. It appears, however, that Gardner finally refused to make the contract, upon the ground that he would not deal directly with defendant W. H. Douglass; that upon the matter taking this turn, Caneer and Gillespie, on June 15, 1909, entered into a similar contract themselves with W. H. Douglass, agreeing to assume and pay the two notes mentioned, for the consideration above referred to; this being done, it seems, with the understanding with Gardner that he in turn would relieve them of the obligations and lia-

bilities thus assumed, upon the transfer to him of the consideration received. At any rate, it appears that, on the following day, a contract was entered into between Caneer and Gillespie on the one hand and Gardner on the other, whereby the latter assumed and agreed to pay the two notes mentioned, to-wit, the note sued upon and the one at the Union Station Bank, and that in consideration therefor Caneer and Gillespie delivered to him the said consideration which they had received from the defendant, W. H. Douglass. It seems, however, that Gardner declined to make the agreement in question, assuming the payment of the note in suit, unless the time of payment of the latter were extended from July 1, 1909, to September 1, of that year.

Gillespie testified that Caneer, purporting to represent plaintiff bank, and for and on behalf of the latter, did in fact agree to so extend the time of payment of the debt, as an inducement to Gardner to assume the payment thereof, neither defendant W. H. Douglass, nor his codefendants, being present or knowing thereof. Defendant W. H. Douglass testified that Caneer shortly thereafter told him over the telephone that he (Caneer) had so agreed to extend the same; and that such extension was without the witness's knowledge or consent. He also testified as to the contents of a letter written by Gardner to plaintiff containing a promise of the writer to pay the note sued upon on or before September 1, 1909.

It seems that there was a written contract prepared, between W. H. Douglass and Gardner, which the latter did not sign. This, it appears, contained the terms of the agreements afterward made, but what, if anything, the parties signed does not appear. The evidence shows that the paper just referred to, and the above mentioned letter, had been attached to a deposition as an exhibit in another case, which deposition and the exhibits attached thereto had disappeared.

Caneer did not testify as to the details of the transactions either between himself and Gillespie on the one hand and Douglass on the other, or between himself and Gillespie on the one hand and Gardner on the other; nor did he deny making the contract with Gardner whereby the latter assumed the note. He denied that there was any agreement whereby, on behalf of the bank, he *released* the defendants from liability on the note; denied in terms that he extended or undertook to extend the payment of the latter; denied that at that time he was "the cashier" of plaintiff bank, stating that O. H. Story was then the cashier.

Touching the question of Caneer's authority to bind the bank in the premises, the record contains much testimony and many exhibits offered to show the course of dealing between Caneer and the bank and the relation which he sustained to the latter at or about the time in question; but it is unnecessary to review this evidence in detail.

No extension of time beyond June 1, 1909, appears upon the back of the note. A letter written by Caneer on June 16, 1909, to Gillespie, was put in evidence, whereby the writer stated: "I 'phoned W. H. Douglass that I was willing to hold the note until September, so do as you can or whatever you think best." It appears that subsequent to June 16, 1909, the plaintiff bank at no time notified or made demand upon the defendants, or any of them, with respect to the note until the 9th of the following September.

Story testified that the bank had another note of Gardner's, and that some correspondence was had with the latter, but that he did not remember "whether it was about this note or not." On September 9, defendant W. H. Douglass was notified that the note was past due, the printed notice sent him having on it this notation: "Please have the parties fix." The note not having been paid, on February 12, 1910, plaintiff bank notified Gillespie that the note had not been paid, say-

ing: "It was our understanding that same was to have been paid last September. . . . Please let us hear from you or some one in this connection. . . . Let us hear from you by early mail with remittance." And defendant W. H. Douglass testified as to the contents of a letter written by plaintiff to Gardner early in 1910, demanding payment from the latter; which letter the witness said he had seen in the insurance company's files, but which could not later be found.

The cause came on to trial before the court and a jury, and upon motion then made by plaintiff, the court ordered that part of the amended answer stricken out "which deals with the allegation of an agreement, to-wit: The assuming of this note and the release of the makers and sureties thereon." Despite this action of the court, and which ruling, as made, purported to have the effect of striking out practically all of the answer, the cause proceeded to trial before the court and a jury upon the issues raised by the amended answer relative to the assuming of the payment of the note, first by Caneer and Gillespie, and then by Gardner, and the alleged release of the defendants from liability thereon by the acts of plaintiff in the premises.

Upon the trial before the jury, the foregoing evidence was adduced by the parties, and the cause referred to the jury under certain instructions which we shall notice later, and resulted in a verdict for plaintiff. Thereafter, at the same term, by agreement of counsel for both plaintiff and defendants, the cause, upon the same evidence adduced before the jury, was submitted to the court sitting as a chancellor upon the so-called equitable plea of estoppel set up in defendants' answer. The court, upon considering the same, found for plaintiff, and thereupon rendered judgment in its favor for the amount of the jury's verdict.

1. There was much confusion with respect to the trial of the real issues involved. Both in the taking of the testimony and in the instructions, the court ap-

pears to have proceeded in the main upon the theory
that it was necessary for the defendants to establish a
complete novation, Gardner becoming the new debtor;
that is to say, that not only had Gardner assumed pay-
ment of the note in question, but that the plaintiff had
agreed to release these defendants from liability
thereon—had discharged the original debt and substi-
tuted Gardner as the new debtor in lieu of these de-
fendants.

No such issue as this was raised by the pleadings.
We may disregard the ruling of the trial court upon
plaintiff's motion to strike out parts of the amended
answer, for the case was tried as though such ruling
had not been made. It is true that the word novation
is used in the answer, but the answer nowhere avers
that plaintiff agreed to release the defendants from
their liability on the note and discharge the indebted-
ness as to them. Such were not the facts pleaded in
defense, nor was there any evidence whatsoever in sup-
port of such theory. In fact, the defendants at the
trial, in open court, disclaimed that there was any such
defense interposed; as they do in their brief before us.

The defense which was in fact attempted to be set
up by the answer, and which was supported by the
evidence adduced on behalf of defendants, was that
Caneer and Gillespie, for a valuable consideration,
contracted and agreed with the defendant W. H. Doug-
lass to assume and pay the note; that thereafter Gard-
ner, for like valuable consideration, contracted and
agreed with Caneer and Gillespie to assume and pay
the same; and that as a part and parcel of this subse-
quent agreement, and as an inducement to Gardner to
agree to assume the payment of the note, Caneer, acting
for and on behalf of plaintiff, and clothed with power
and authority to bind it in the premises, and without
the knowledge and consent of the defendants, agreed
to extend and did extend the time of payment thereof
from July 1, 1909, to September 1, 1909; and further

that plaintiff bank thereupon ratified the acts of its alleged cashier in the premises.

Appellants nowhere contend that the mere agreement on the part of Caneer and Gillespie to assume and pay the note in anywise released them from liability thereon, but say that it did not. The theory of the defense interposed by appellants is that when Caneer and Gillespie assumed payment of the note, the defendants, as between themselves, Caneer and Gillespie, became sureties for the payment of the debt; that when, thereafter, the subsequent agreement was sought to be made with Gardner, with not only Caneer and Gillespie as parties, but the bank also, the latter acting through its alleged cashier and representative, then plaintiff bank, by assuming to thus deal with Gardner, became bound to recognize and regard defendants as being sureties merely; and that the acceptance of Gardner as the primary obligor, and the extension of time alleged to have been granted by plaintiff, without the knowledge and consent of the defendants, operated in law to release the latter, as such sureties, from all liability upon the obligation in question.

This we say was the real defense sought to be interposed, and it remains to be seen whether such defense is available to these defendants under the circumstances appearing in evidence.

II.  That the facts pleaded and appearing in evidence did not constitute a novation we think is clear. It is said that to establish a novation it is essential that four things be shown: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the extinguishment of the old contract; (4) the validity of the new one. [29 Cyc. 1130; see, also, Babbitt v. Railroad, 149 Mo. App. 439, 130 S. W. 364; Elliott v. Qualls, 149 Mo. App. 482, 130 S. W. 474.] The creditor must have consented to the discharge of the original debtor, accepting in his stead the new debtor. [29 Cyc. 1132; Leckie v. Bennett, 160

Mo. App. 145, 141 S. W. 706; Babbitt v. Railroad, supra; Elliott v. Qualls, supra; Brown v. Croy, 74 Mo. App. 462; Lumber Co. v. Meffert, 59 Mo. App. 437.]

In the instant case, the defendants were not parties to the agreement with Gardner; neither did they plead, nor did the evidence show, any agreement on the part of plaintiff to release the defendants and altogether substitute some one else in their stead. The contract on the part of Gardner was supported by a valuable consideration, but essential elements of a complete novation are lacking; and, as we have said, such does not appear to be the theory of the defense.

III. There can be no doubt that the agreement between defendant W. H. Douglass and Caneer and Gillespie operated to create the relation of principal and surety as between the parties themselves; that is to say, as between themselves and the defendants, Caneer and Gillespie having for a valuable consideration agreed to assume and pay the debt, became the principals with respect to the obligation in question, and the defendants were relegated to the position of sureties with respect to the payment thereof. It is not claimed that plaintiff bank was in any way a party to this agreement. It is not contended that, with respect to this first agreement, Caneer acted for the bank, or contracted otherwise than in his personal capacity.

It is unnecessary for us to decide what, at this stage of the matter, would have been plaintiff's position, had it been merely notified of the agreement made with Caneer and Gillespie and that as between them and the defendants the latter had become sureties for the debt. Whether the plaintiff, upon merely being notified of such agreement, would, under these circumstances, have been bound to recognize and respect the relation thus created between defendants and the parties assuming the debt, is a matter not here directly involved. Certain it is that the plaintiff, upon becoming aware of the contract made by Caneer and Gil-

lespie, could have chosen, at the maturity of the note as it then stood, to have proceeded against the latter as well as the defendants for a recovery of the debt, and likewise Gardner's assumption of the debt caused him in like manner to become liable to plaintiff; for it is well established that a contract made, upon a valid consideration, between two or more persons for the benefit of a third party, may be enforced by the latter, for whose benefit it is made, if he thereafter adopts it, and though he had no knowledge thereof at the time. [See Beattie Mfg. Co. v. Clark, 208 Mo. 89, 106 S. W. 29, and cases cited; Lumber Co. v. Banks, 136 Mo. App. 44, 117 S. W. 611; Bank v. Commission Co., 139 Mo. App. 110, 120 S. W. 648.]

However, the liability of Caneer, Gillespie and Gardner in the premises is not here directly involved. The question is whether, by virtue of assuming to become a party to the subsequent contract with Gardner, in the manner and under the circumstances aforesaid, the plaintiff placed itself in a position where it became bound to respect the suretyship, so far as concerns these defendants; and, if so, whether the alleged extension of time on the note operated to release the defendants.

This is not a case where a grantee of premises accepts a conveyance thereof from his grantor, covenanting to assume and pay the grantor's note secured by a mortgage or deed of trust upon such premises. In such cases it is well established that not only, as between such grantor and grantee, does the latter become the principal debtor and the former a surety for the payment of the mortgage debt, but our courts hold further that, although the owner of the mortgage note may enforce the liability against both such grantor and grantee, nevertheless, after receiving notice of such assumption of the debt, he is bound to recognize the suretyship and to respect the rights of the surety in his subsequent dealings with the parties; and any

act on his part which, in law, will release a surety, will operate to release the mortgagor. [See Nelson v. Brown, 140 Mo. 580, 41 S. W. 960; Regan v. Williams, 185 Mo. 620, 84 S. W. 959; Laumeyer v. Hallock, 103 Mo. App. 116, 77 S. W. 347; Wonderly v. Giessler, 118 Mo. App. 708, 93 S. W. 1130; Van Meter v. Poole, 130 Mo. App. 433, 110 S. W. 5.] And such promise of the grantee of the land to pay the mortgage debt need not be incorporated in the deed of conveyance itself, nor even evidenced by a written instrument, but may be entirely oral. It is not within the Statute of Frauds and required to be in writing, nor is it an agreement to pay the debt of another, but is an original undertaking. [See Van Meter v. Poole, Nelson v. Brown, supra.]

In the case before us, the obligation assumed was not a mortgage note secured by the property which was transferred from defendants to Caneer and Gillespie and by the latter to Gardner, but, if the facts are as defendants contend, there are strong reasons why the same rule should obtain, so far as concerns the duty of plaintiff to respect the relation of principal and surety; there being no equities with respect to mortgaged property to be dealt with. We are not embarrased by the question as to what the bank's rights and duties might have been, in dealing thereafter with these parties, had the bank not been itself a party to the final agreement and had been merely notified that these respective agreements had been entered into. Defendants' theory, which there is evidence tending strongly to support, is that plaintiff bank was, in fact, through its cashier, a party to the agreement with Gardner; that is to say, that Caneer acted in that transaction not only for himself personally, as one of the parties who had theretofore assumed the payment of the note, but as the plaintiff's representative, and that, as an inducement to secure Gardner's agreement, made a binding contract on the part of plaintiff to extend the

time of payment of the note from July 1 to September 1, 1909.

Even aside from the fact that plaintiff, as appellants contend, was a party to the very contract itself with which we are now dealing, there is ample authority for the proposition that, if a creditor accepts a promise of a third party made to his debtor, he becomes bound to respect the relationship of principal and surety existing between such third person and the promisee.

In Malanaphy v. Mfg. Co., 125 Iowa 719, 106 Am. St. Rep. 332, the court in treating of this question said:

"Necessarily the rights of a party for whose benefit a promise is made must be measured by the terms of the agreement between the principal parties, and the right to recover from the promisor is not absolute in all cases. Among other limitations, the party to be benefited takes subject to all inherent equities arising out of the contract, as affecting the principal parties one with the other. This follows naturally from the relation of privity which the law implies. [Dunning v. Leavitt, 85 N. Y. 30 (39 Am. Rep. 617); Ellis v. Harrison, 104 Mo. 270, 16 S. W. Rep. 198; Brandon v. Hughes, 22 La. Ann. 360; Trimball v. Strother, 25 Ohio St. 378; 7 Am. & Eng. Enc. Law (2 Ed.), 109.]

"Turning our attention to the principal parties to the contract, it is quite clear that as between them the promisor became primarily liable for the debt. It assumed the relation of a principal, and, as to it, the obligation of the promisee became that of a surety only. . . . Now as a creditor for whose benefit a promise is made takes subject to the equities existing between the principal parties, it follows conclusively that, if he accepts of such promise, he becomes bound to observe the relationship of principal and surety existing between the principal parties, and must act in recognition thereof."

In this same connection, see 1 Brandt on Surety-ship (3 Ed.), Sec. 1; Sec. 46, Note 15; 32 Cyc, 35).

That the right of action by a party for whose benefit and advantage a contract is made between two other persons is dependent upon and subordinate to the terms of the contract as made is fully recognized by our courts. [See Ellis v. Harrison, supra; Davis v. Dunn, 121 Mo. App. 490, 97 S. W. 226; Beattie Mfg. Co. v. Clark, 208 Mo. 89, 106 S. W. 29.] Certain it is that the right of the creditor to proceed against the third party so assuming the debt is measured by the contract of assumption. And, as said in Malanaphy v. Mfg. Co., supra, it would seem to follow that when he does elect to adopt the promise of such third party he must take it *cum onere*, and must respect the relation existing between the promisor and the promisee.

But the instant case presents a further reason for holding that plaintiff became bound to observe and respect the relation of defendants as sureties. For, indeed, if plaintiff not only accepted the promise of Gardner, but actively took part in inducing the latter to assume the debt, and assumed to treat and deal with him as a principal, without consulting the defendants, then we think it cannot be doubted that the plaintiff should be held to have elected to accept Gardner as the primary debtor, and should be permitted to look to the defendants merely as sureties. In this connection, we may say that, after the contract was entered into, whereby Caneer and Gillespie assumed the note, the latter became obligated to pay the same when it matured, July 1, 1909, and had they failed to do so, the defendants would have been entitled to pay the debt and at once proceed to protect themselves in the premises. Defendants were not parties to the subsequent agreement, had nothing to do with it in fact, and their rights may have been seriously prejudiced by a valid extension of time, if there was one. And if the plaintiff was a party to the contract with Gardner, and

actively participated in procuring the same, then it seems clear that if plaintiff, either at the time or thereafter, did anything which would in law release a surety, it should operate to release these defendants.

IV. That Caneer was cashier of plaintiff bank, with authority to act for it in the premises, at the time the contract with Gardner was made, we think cannot be doubted. Indeed, it fully appears that he had been appointed cashier by the board of directors, who alone may lawfully appoint or remove a cashier (Rev. Stat. 1909, sec. 1112), and had performed the duties of this office for some considerable period of time; that, upon coming to St. Louis, he did not resign as cashier or sever his connection with the bank, but that he represented the bank in many transactions, and kept in constant communication with the latter, supervising and directing its more important affairs. It is true that the evidence shows that Story was engaged to and did perform such of the active duties pertaining to this office as were required to be performed at the bank; though the evidence is quite convincing that he reported to Caneer and looked to the latter for advice and direction during this period. The bank's records show that he was not elected cashier until August 16, 1909, two months after the making of the contract with Gardner. It is quite clear therefore that Caneer was lawfully authorized to represent the bank as cashier during this period. And there is abundant evidence that he did exercise such authority.

V. As to the authority of a cashier to bind a bank by a contract, such as it is contended was made with Gardner, there can be no serious doubt. The cashier is the executive officer of the bank through whom the bank's business of this nature is ordinarily conducted; and he is held out to the public as having authority to act in accordance with the general custom, practice and course of business of such institutions. Consequently, an act, such as is claimed was done by him

in the present case, must be regarded as being prima facie, at least, within the scope of his duties and authority. [See Hughes v. Bank, 62 Mo. App. 576; Bank v. Dick, 73 Mo. App. 354; Bank v. Loyd, 89 Mo. App. 262; Houston v. Kirkman, 156 Mo. App. 309, 137 S. W. 38; Bank v. Bank, 244 Mo. l. c. 577, 149 S. W. 495.] And should there be any doubt as to this question, the evidence respecting the course of dealing on the part of the bank, through Caneer, was such that the latter's authority in the premises may well be inferred, particularly from proof that he had virtuously been entrusted with the entire management of the bank's business. [See Bank v. Hughlett, 84 Mo. App. 268; Marshall v. Bank, 76 Mo. App. 92.]

In this connection, it may be well to notice that the evidence adduced by defendants went to show that, in making the contract with Gardner, Caneer acted both for himself and the bank; that the agreement in fact was one between himself, Gillespie and the bank on the one hand and Gardner on the other. This it was competent for him to do; and if he was clothed with authority to act for the bank, the latter is bound by the agreement, and his knowledge in the premises is imputed to the bank. [See Stonecutter Co. v. Myers, 64 Mo. App. 527; Withers v. Bank, 67 Mo. App. 115; Latimer v. Loan & Inv. Assn., 78 Mo. App. 463.]

VI. But conceding such contract to have been made with Gardner as defendant charges, and the authority of Caneer to bind the plaintiff in the premises, it remains to be seen whether defendants should be released by reason of the alleged extension of time on the note, under the circumstances appearing.

At the threshhold of this question, the provisions of the note itself should be considered. As we have said above, the note provided that the "makers and endorsers" thereof made certain waivers, and consented that the time of payment might be extended without notice. In the face of this provision in the

note, it cannot well be doubted that, had there been any party to the instrument originally entitled to be treated by plaintiff as a surety, such surety would not have been released by an extension of time to the primary obligor. That is not the question with which we are now dealing, however, for the promise of a third party to pay the debt, and which it is said was not only accepted, but was induced, by the plaintiff, was a separate and distinct contract, and an original undertaking in itself. [See Van Meter v. Poole; Nelson v. Brown, supra.] It had the important effect of creating entirely new relations between the parties, independent of the original instrument, and of relegating the original makers of the note to the position of sureties, upon a new and independent undertaking; their liabilities being measured no longer by the original instrument but by the new obligation and the relation which they bore to the latter. In this view, if plaintiff by the new contract made a valid agreement to extend the time of payment for a definite period of time, we think there can be no doubt that these defendants were released as such sureties.

VII. And in this same connection should be considered the effect of the Negotiable Instruments Law of 1905 upon the matter in hand. Upon the question of the discharge of a surety by the granting of an extension of time to the principal debtor, sections 10161, 10089 and 10090, Revised Statutes have an important bearing. Section 10161, supra, provides: "The person primarily liable on the instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are secondarily liable." Section 10089, makes provision as to what will discharge a negotiable instrument. Section 10090 sets out those things which will discharge a person secondarily liable on the instrument, among these being "an agreement binding upon the holder to extend the time of payment," etc.

And under these sections of the statute, it is now held that those who sign as joint makers, and therefore "by the terms of the instrument" are absolutely required to pay the same, are by the statute made "persons primarily liable;" and that, therefore, none of them will be permitted to show that they signed as sureties merely, and hence none of them will be released by an extension of time. [See Lane v. Hyder, 163 Mo. App. 688, 147 S. W. 514, and authorities cited.]

In the case before us, one feature of the defense pleaded was that W. H. Douglass was in fact the party primarily liable, and that his codefendants, who signed the note as comakers, were accommodation makers, which was known to plaintiff, and that they were therefore sureties from the beginning. The note, however, was executed January 10, 1906, after the above mentioned statute had become effective, and hence all of the signers of the note were originally "parties primarily liable," and none of them sureties.

However, the above mentioned change in our law, effected by the adoption of the statute in question, is without influence here, so far as concerns the real matter under consideration; that is to say, though all of these defendants were originally parties primarily liable, and none of them then entitled to be treated as sureties, the making of a distinct new contract with a third person, as of an original undertaking, such as it is said was here done, has the effect of relegating the original makers of the note to the position of sureties with respect to the obligation of the new promisee to pay the debt. In this regard, the operation of the new agreement made with a third person is unaffected by the Negotiable Instruments Law, for the relationship thereby created between the parties arises independent of the original instrument.

VIII. In order for an extension of time of payment to operate to release one who occupies the position

178 Mo. App. 44

of surety, such extension must not only be for a fixed and definite period of time, but must be supported by a valid consideration and binding upon the creditor, so that the latter is thereby precluded in the meantime from proceeding to enforce the collection of the debt. Such is the rule declared by numerous decisions of our courts; and it is in no wise altered by the Negotiable Instruments Law. [See Rev, Stat. 1909, Sec. 10090.]

But the evidence adduced on behalf of defendant went to show the making of a binding agreement, based upon a valid consideration, to extend the time of payment of the debt for a period of two months, such as would perforce have stayed the hand of plaintiff during such period. Defendants' evidence on this score, though quite persuasive, was not, however, conclusive; for Caneer testified that he did not extend, or undertake to extend, the time of payment. The question is therefore one for the consideration of the jury upon proper instructions.

IX. We are unable to see that the facts pleaded in defense were such as to raise an equitable estoppel, though, if true, they constituted a valid defense. "An estoppel in pais is defined as a right arising from acts, admissions or conduct and which have induced a change of position in accordance with the real or apparent intention of the parties against whom they are alleged." [Withers v. Railroad, 226 Mo. l. c. 399, 126 S. W. 432, and authorities cited.] But it does not here appear that the alleged acts and conduct of plaintiff can well be said to have induced the defendants to change their position to their detriment. Defendant W. H. Douglass had parted with the consideration which passed from him to Caneer and Gillespie prior to any act on the part of the bank in the premises, and it does not appear that thereafter the defendants in any way altered their position to their injury, in reliance upon the conduct of plaintiff. It is true that

mere silence may, under some circumstances, raise an estoppel, but it does not appear that it was here such as to so operate. [See Withers v. Railroad, supra, l. c. 399-402; Palmer v. Welch, 154 S. W. 433.]

Defendants claim that the facts pleaded by them raised an estoppel against plaintiff, and prayed that the note be cancelled and returned to them; and this matter was passed upon by the court sitting as a chancellor, after the jury trial was had. The case was one to be tried by the jury, however, under appropriate instructions. And though the original makers be relieved from liability upon the note it does not follow that they are entitled to have it cancelled; for the instrument evidences the obligation assumed by others.

X. Instruction No. 1, given for the plaintiff, authorized a verdict for plaintiff unless the jury found that the latter agreed to release the defendants and to accept Gardner as the payor of the note.

And instruction No. 2, given on behalf of plaintiff, told the jury that the defendants relied upon what is termed in law a novation, and that, to constitute the same, the jury must find that, for a valuable consideration, Gardner agreed with W. H. Douglass to pay the note, that the latter consented thereto, and that plaintiff agreed to accept Gardner as the payor thereof, and further agreed to release the defendants.

From what we have previously said, it follows that these instructions were based upon an altogether erroneous conception of the defense pleaded and sought to be proved, were highly prejudicial to the defendants, and should not have been given.

Instruction No. 5, given for plaintiff, told the jury that the cashier could not release the principal on the note and accept in lieu thereof another as payor without authority in writing from the board of directors; and that if a cashier undertook so to do, the bank would not be bound thereby, unless it afterwards adopted and ratified the transaction. This instruction

also was improper, in that it related to a defense not sought to be interposed, and it conveyed an altogether erroneous impression as to the authority of the cashier to bind plaintiff bank under the facts in evidence.

. It is unnecessary to notice the instructions given for defendants, or those which were offered by them and refused.

There are various assignments of error pertaining to the court's rulings on the admission of evidence, but in view of what we have said above, we deem it unnecessary to consider these in detail. From the foregoing it will appear that the defense attempted to be interposed was a valid one; and the evidence adduced tended very strongly to support it. But it cannot be said that the evidence conclusively established such defense, particularly in view of Caneer's testimony denying the granting of an extension of time for the payment of the debt. The judgment should therefore be reversed and the cause remanded, with leave to appellants to amend their answer if so advised. It is so ordered. *Reynods, P. J.,* and *Nortoni, J.,* concur.