BANK OF MOUNTAIN VIEW, Respondent, v. RAY McMINDS and J. R. STEVENSON, Appellants.

Springfield Court of Appeals, December 5, 1921.

1. **BANKS AND BANKING: Cashier of Bank May not Use Notes Due Bank to Buy Light Plant.** Under Revised Statutes 1919, section 11741, prohibiting banks from engaging in trade, or from owning or operating industrial plants, a bank cashier has no authority to use notes due the bank to pay for an electric light plant to be run as a commercial venture in which the bank is a partner.

2. **NEW TRIAL: Newly Discovered Evidence Held not Sufficient to Authorize.** A motion for new trial, made on newly discovered evidence that one surety on a note sued on had been released, should not be granted where such release only released the defendant surety, who made no showing for a new trial on this fact, and the case was tried on a theory different from the defense in the newly discovered evidence.

Appeal from the Circuit Court of Greene County.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED.

*J. P. Swain* for respondent.

(1) The cashier was without power, by virtue of his office, and it is upon that alone that the claim of defendants that they were released is based, to make any such an agreement. Neither express authority nor ratification appears here. In fact, the contrary appears from

the testimony of defendant, Stevenson, who was at the time a member of the board of directors of plaintiff, Bank of Mountain View. Hodiamont Bank v. Franklin, 215 S. W. 503, and authorities therein cited; Bank of Dexter v. Simons et al., 204 S. W. 837. (2) The notes in suit were retained in possession of the plaintiff, and carried on its books as an asset. There never was a written release, or renunciation of the rights of plaintiff. ". . . A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon. Sec. 908, R. S. 1919; Engle v. Brown, 202 Mo. App. 345, 216 S. W. 541; Pitt v. Little, 58 Wash. 355, 108 Pac. 941.

BRADLEY, J.—Plaintiff filed its petition in two counts on two promissory notes, one dated March 17, 1917, for $500, signed by defendants and one Frank J. McGrath, and one for $300, date not given in the record, and signed by defendants and Mrs. Celia McMinds. After the evidence was in, the court directed a verdict for plaintiff, and defendants failing to get a new trial appealed.

The petition is in the usual form. The answer pleads a settlement and discharge of the notes. McMinds, the principal debtor, sets up as a defense that in May, 1918, after the maturity of the notes he entered into an agreement with M. L. Landrum, cashier of plaintiff bank, whereby Landrum for the bank purchased McMinds' light plant in Mountain View, and that the notes sued on were satisfied in said deal. It is conceded that Landrum purchased the light plant, but he contends that he purchased it on his own account, and for himself and not for the bank. McMinds executed a bill of sale for the light plant specifying in detail the things sold, the consideration being given as $2500, and Landrum being designated as the vendee. The warranty in the bill of sale excepted two chattel mortgages, one to Landrum, and one to Waldo Edwards. The Landrum and Edwards mortgages made up the $2500, and Landrum says that the re-

lease and cancellation of these two mortgage debts constituted the consideration for the light plant. The Landrum note was for $1000 and the Edwards note $1275, and the amount due at the date of the bill of sale was about $2500, the consideration expressed therein. Also it appears that the light plant had been advertised for sale under the Landrum mortgage at the time of the execution of the bill of sale. It is difficult to determine just the amount of indebtedness that McMinds claims was settled by the transfer of the light plant, other than the mortgage notes, and the notes sued on, which McMinds claims were settled and paid by the sale of the light plant.

McMinds owed the bank about $800 represented by three notes at the time of the light plant deal with Landrum. McMinds testified positively that the notes sued on were included in the light plant deal. Defendant Stevenson was a director in the bank at the time, and says that Landrum was acting for the bank in the light plant deal, and that it was his understanding that the notes sued on were settled in said deal; that he had discussed the matter with Landrum, and asked him why he did not turn over McMinds' notes; that after the bill of sale he did not pay any interest on the McMinds notes. However it appears that Stevenson on December 16, 1918, several months after the bill of sale, gave his check for $10 to pay interest "on McMinds note." but no credit of that date appears on either note sued on. It does appear, however, that on November 2, 1918, $20 interest was paid on the $500 note, and on the same date interest on the $300 note was paid to January 11, 1919. Afterwards two other interest payments were made on the $300 note paying interest to July 11, 1919. On November 2, 1919, McGrath paid $266.55 on the $500 note, but it is not claimed that this payment was made at the instance of McMinds. All these interest payments mentioned were subsequent to the date when McMinds claims that he settled the notes sued on by transfer of the light plant. There were several interest payments on the notes, some

prior and some subsequent to July 8, 1918, the date of the bill of sale. Just who made the payments subsequent to that date is not clear. Landrum says that McMinds made several payments and that some of the sureties made some of the payments, but the payments subsequent are not fully explained.

The bank records showed no action by the board touching the light plant. It does not appear on what theory the trial court directed a verdict for plaintiff. Plaintiff made three contentions: (1) That its cashier did not purchase the light plant for plaintiff; (2) that if he did attempt to so purchase that he had no authority to so act, and that plaintiff had not in any manner ratified any such action, and was therefore not bound; (3) that the bill of sale was conclusive and that defendants could not under the pretext of explaining the consideration show that the notes sued on were included.

In our view of this case it is not necessary to consider any except the second proposition. The first one is a question of fact, and judging from the record touching the first proposition we infer that the trial court based his ruling either upon the second or third, probably the second. There was evidence we think of a substantial nature admitted for the most part without objection tending to support defendants on the question of fact. On the other hand there is abundant evidence to the contrary. But if defendants' answer may go to defeat plaintiff's suit, then it is not material which may the trier of facts would determine that issue. It is our opinion, that even though the cashier made the deal exactly as McMinds says he did, that such transaction in the light of this record would be utterly void. At least $2500 of the $3300 consideration according to McMinds was paid by Landrum, and not by the bank. The notes held by the bank were well secured, and there was no occasion to barter them. The board of directors had taken no action concerning the matter. The light plant was transferred to Landrum, the cashier, and he continued to operate it, and receive the profits. To sustain defendants would be

equivalent to holding that a cashier of a bank could decide for himself on the one hand, and for the bank on the other, and without consulting the board of directors, and without their action, that he and the bank would enter into a partnership to conduct a business. Here the bank would have about $800 invested, and of course would receive its share of the profits, and would *also* be liable for its share of the losses. We recognize that the courts have sometimes gone the limit (perhaps more constrained by a sense of justice) in dealing with the *powers* of a cashier of the ordinary country bank, Citizens Bank v. Douglass, 178 Mo. App. 664, 161 S. W. 601; but we have found no case where the cashier has been permitted to take the bank's funds and lawfully launch a copartnership. In Bank of Dexter v. Simmons, 204 S. W. (Mo. App.) 837, while discussing the authority and power of a cashier, we said: As to the second proposition, that the president and cashier of the bank after the bank acquired the notes for value agreed to release these defendants from any liability thereon, any such agreement was beyond the scope of their authority, and is not binding on the bank, especially so when, as here, there was no consideration for such release, and no question of estoppel is in the case. It has been directly held that the cashier of a bank, who is the chief executive officer thereof, cannot by contract discharge a party to a note from liability thereon, and the same would be true as to the president;'' citing People's Saving's Bank v. Hughes, 62 Mo. App. 576; Daviess County Savings Ass'n v. Sailor, 63 Mo. 24; Bank v. Lee, 198 Mo. App. 496, 196 S. W. 43. But aside from the case law upon the question, the statute, section 11741, Revised Statutes 1919, in the chapter on banks in our opinion is applicable to the facts of the instant case. This section reads: ''No corporation now existing, nor any hereafter organized under any law of this State, whether general or special, as a bank, or to carry on a banking business, shall employ its moneys, directly or indirectly, in trade or commerce, by buying and selling ordinary goods, chattels, wares and merchandise, or by owning or operating industrial plants;

Provided, that it may sell all kinds of property which may come into its possession as collateral security for loans, or in the ordinary collection of debts." This section we think prohibits what defendants urge that the bank through its cashier did. There is no showing or attempt to show that the cashier made the deal "in the ordinary collection of debts."

Defendants insist that the trial court should have granted a new trial on the ground of newly discovered evidence. Defendants set up in their motion that in about seven hours after the verdict was returned they for the first time learned that the bank had unconditionally released McGrath from further liability on the $500 note when he made the $266.55 payment on October 2, 1919. This ground is supported by affidavits of defendants and McGrath. McGrath deposed that he was released, but he does not state the facts of his release. His statement is a mere conclusion. And so far as the affidavits of defendants are concerned they state no more than that the information of the release came after the verdict. No hearing was had on the motion, but defendants were content to rest this point on the affidavits. Defendants certainly knew that McGrath had made this payment long before the cause was filed or tried. The credit was at all times on the note. The parties all lived in Mountain View and the neighborhood. The cause went on change of venue from Howell County to Greene County and was pending about a year before trial, and all this time defendants knew McGrath had made this payment on a note that defendants claim was paid in full more than a year before, yet neither defendant consulted McGrath to ascertain why he made such payment. If McGrath was released it would affect only defendant Stevenson, who is a surety like McGrath, but Stevenson has not made the necessary showing to entitle him to a new trial on the ground of newly discovered evidence. ferent to the newly discovered ground.

And further the cause was tried on a theory entirely different to the newly discovered ground.

The judgment below should be affirmed and it is so ordered. *Cox, P. J.,* and *Farrington, J.,* concur.